WILLIAM N. ANASTOS *vs.* GARY M. SABLE & another.[1]

Middlesex. November 1, 2004. - December 22, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Partnership,* Dissolution, Withdrawal of partner. *Practice, Civil,* Attorney's fees, Costs, Interest. *Interest. Damages,* Interest.

In a civil action arising from the withdrawal of a partner from a general partnership, which caused a statutory dissolution in contravention of the partnership agreement, but where the remaining partners, rather than liquidate, elected under G. L. c. 108A, § 38, to continue the partnership's business for the remaining term of the partnership agreement, the trial judge did not err in determining the value of the withdrawing partner's partnership interest using a methodology appropriate to evaluate a minority interest in a going concern, rather than by basing the withdrawing partner's interest on the liquidation value of the partnership's assets [149-152]; moreover, the enforcement of a stipulation of the parties regarding the award of attorney's fees and expert witnesses fees was conducive to justice under the circumstances of the case [152-153], and no statutory basis existed that would permit the withdrawing partner to recover prejudgment interest on the amount awarded to him [153-156].

CIVIL ACTION commenced in the Superior Court Department on September 11, 1996.

Motions for summary judgment were heard by *Allan van Gestel,* J.; the case was heard by *S. Jane Haggerty,* J., and a motion to alter or amend judgment was heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Andrew Lawlor* for the plaintiff.

*Christopher Weld, Jr.,* for the defendants.

SPINA, J. This appeal addresses the proper valuation of a minority interest in a general partnership when the withdrawing partner caused a statutory dissolution in contravention of the partnership agreement and, rather than liquidate, the remaining

___

[1]John A. Geishecker, Jr.

partners elected under G. L. c. 108A, § 38, to continue the partnership's business for the remaining term of the partnership agreement.

1. *Background.* The plaintiff, William N. Anastos, and the defendants, Gary M. Sable and John A. Geishecker, Jr., entered into a written agreement in 1984 forming a partnership for the purpose of purchasing real estate improved with a manufacturing facility and subsequently collecting rents from the tenant. At the time of the original lease, the partnership members were all executive level employees and shareholders of the tenant. As amended, the partnership agreement runs until 2010 and each of the parties owned a one-third interest.

In 1996, the plaintiff filed a complaint in the Superior Court seeking dissolution of the partnership for cause under G. L. c. 108A, § 32. The defendants answered and asserted counterclaims, including a request for a declaration that the plaintiff's request to dissolve the partnership contravened the partnership agreement and therefore was wrongful, and that the defendants, who elected to continue the partnership business, were entitled to damages as a result of the plaintiff's wrongful dissolution. The parties filed cross motions for summary judgment. On June 8, 1998, a judge in the Superior Court denied the plaintiff's motion for summary judgment, and allowed the defendants' motion for partial summary judgment, concluding that the plaintiff's request for dissolution contravened the terms of the partnership agreement.

The matter proceeded to a bench trial on the issues of the value of the plaintiff's interest in the partnership at dissolution and the damages, if any, caused by the plaintiff's dissolution of the partnership in contravention of the partnership agreement. The judge found that, as of the date of dissolution, the value of the net assets of the partnership was $2,494,005. There is no dispute about this finding. The judge determined, however, that because the partnership was a going concern, the value of the plaintiff's one-third minority interest was not necessarily equal to one-third of the liquidation value. She found that the plaintiff lacked control over the financial, operational, and management decisions of the partnership, and that his interest was illiquid. She further found that there is no ready market for the purchase

of a minority interest in a general partnership whose primary asset is real estate where the partnership agreement contains limitations and restrictions on the control that any minority owner can exercise. These factors led to the conclusion that, in this case, the value of the one-third partnership interest was less than the value of one-third of the partnership's net assets.

Based on expert testimony of comparable sales of general partnership interests and the literature regarding the appropriate discount to apply to determine the value of the plaintiff's minority interest, the judge concluded the appropriate discount here was forty per cent. Rounding out the final figure, the judge ultimately determined that the plaintiff's interest in the partnership had a value of $500,000.

As to the damages caused by the plaintiff's breach of the partnership agreement, the judge relied on a stipulation of the parties that legal fees and expenses, expert fees, and various other specified costs would comprise the elements of damages. On this basis, she determined that the amount of damages was $150,153. The amount owed to the plaintiff for his partnership interest correspondingly was reduced by this amount and judgment entered for the plaintiff in the amount of $349,847.

Prejudgment interest was a matter of contention. Initially, the judgment included prejudgment interest for the plaintiff in the amount of $236,594, resulting in a total award for the plaintiff of $586,441.49. The defendants filed a motion to alter or amend the judgment, which was allowed. The amended judgment included no prejudgment interest for the plaintiff, but it included prejudgment interest on the damages awarded to the defendants at the rate of twelve per cent per annum, or $101,200. A revised final judgment of $248,647 entered for the plaintiff, although the defendants were identified as the prevailing parties and were awarded costs. No new findings accompanied the amended judgment.

The plaintiff, represented by new counsel, filed his own motion to alter or amend the judgment, addressing the issues of prejudgment interest and the propriety of including the defendants' legal and expert witness fees and expenses in their claim for damages. The plaintiff's motion was denied. The

plaintiff appealed, and alleges error in the application of a minority discount to his interest in the partnership, the award of attorney's fees and expert witness fees and expenses as part of damages, the failure to award him prejudgment interest, and the award of prejudgment interest to the defendants. We transferred the case to this court on our own motion. We affirm.

2. *Minority partnership interest.* The trial judge determined the value of the plaintiff's partnership interest using a methodology appropriate to evaluate a minority interest in a going concern. *Sarrouf* v. *New England Patriots Football Club, Inc.*, 397 Mass. 542, 544-549 (1986) (fact finder to determine weight of various relevant factors when determining value of going concern). In reviewing the judge's decision, we accept her findings of fact unless they are clearly erroneous. *Kendall* v. *Selvaggio*, 413 Mass. 619, 620-621 (1992). The judge's legal conclusions are reviewed de novo. *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976).

The plaintiff alleges error, claiming that, under G. L. c. 108A, § 38, valuation of his interest must be based on the liquidation value of the partnership's assets. When a partner causes the dissolution of a partnership in contravention of a partnership agreement (as happened here), the remaining partners may elect to continue the partnership's business for the remainder of the partnership term. See G. L. c. 108A, § 38 (2) (*b*). Whether to use the liquidation or going concern method for valuation of the departing partner's share in such a situation is a matter of first impression for this court.

The method of valuation of a partnership interest in a going concern necessarily differs from the valuation of the same interest at the point of liquidation. The liquidation value looks to the value of the partnership's assets less its liabilities and determines each partner's appropriate share. When valuing a going concern, however, the market value of the partnership interest itself is what is at stake, rather than the percentage of net assets it represents. Depending on circumstances, the market value of the partnership interest may be more or less than the value of the same percentage of net assets.

General Laws c. 108A, § 38, specifies the rights of partners on dissolution of a partnership. It was enacted in 1922 and is

identical to § 38 of the Uniform Partnership Act (1914), 6 (Part II) U.L.A. 487 (Master ed. 2001). St. 1922, c. 486, § 1.[2] Section 38 provides two options when a partnership is dissolved in contravention of the partnership agreement. The partners who did not cause the wrongful dissolution may terminate the partnership business as if the dissolution were proper, but also recover damages for the breach of the agreement from the wrongfully dissolving partner. G. L. c. 108A, § 38 (2) (*a*). Or, alternatively:

> "[I]f they all desire to continue the business in the same name, . . . [they] may do so during the agreed term for the partnership, and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully *the value of his interest in the partnership* at the dissolution, less any damages recoverable [for his wrongful dissolution]" (emphasis added).

G. L. c. 108A, § 38 (2) (*b*). The defendants chose to continue the business.

The plaintiff, having wrongfully caused the dissolution, has rights under G. L. c. 108A, § 38 (2) (*c*), which incorporates §§ 38 (1) and 38 (2) (*a*) (II). If the defendants had chosen to terminate the business of the partnership, the plaintiff would have been entitled under § 38 (2) (*a*) (I) to "have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners." This is essentially the liquidation valuation method discussed above. The plaintiff's share then would be reduced, under § 38 (2) (*a*) (II), by the amount of any damages caused by his breach of the agreement.

Because the defendants chose to continue the enterprise, the plaintiff's rights instead are governed by § 38 (2) (*c*) (II), which affords him,

---

[2]Unlike the Uniform Partnership Act (1914), the Uniform Partnership Act (1997) contains specific rules addressing the buyout of partners in various situations. It has not been adopted in Massachusetts. Uniform Partnership Act (1997) § 701, 6 (Part I) U.L.A. 175 (Master ed. 2001).

"the right as against his co-partners . . . to have the value
of his interest in the partnership, less any damages caused
to his co partners by the dissolution, ascertained and paid
to him in cash, or the payment secured by bond approved
by the court . . . but in ascertaining the value of the
partner's interest the value of the good will of the business
shall not be considered."

The plaintiff claims there is a distinction between the value
of his interest in the partnership when it was a going concern
before the point of dissolution and the value of his "interest in
the partnership at the dissolution" (§ 38 [2] [*b*]), even in a situ-
ation where the remaining partners choose to continue the
partnership business. The plaintiff asserts that the inclusion of
the words "interest in the partnership at the dissolution" in
§ 38 (2) (*b*), which covers the remaining partners' rights and
obligations, must be read to indicate that the partnership is no
longer a going concern for valuation purposes and that a liquida-
tion valuation method must be used instead.

"Dissolution" is a term of art under the Uniform Partnership
Act meant to describe a change in the ownership relationships
of the partnership.[3] Specifically, it is defined as "the change in
the relation of the partners caused by any partner ceasing to be
associated in the carrying on as distinguished from the winding
up of the business." G. L. c. 108A, § 29. On dissolution, the
partnership is not terminated, but rather continues until the
winding up of partnership affairs is completed. G. L. c. 108A,
§ 30. "Winding up" is similarly a term of art under the Uniform
Partnership Act, although it is not defined in the statute itself.
Federal cases provide some guidance, stating that, " 'winding
up' . . . describes the process that occurs during the period fol-
lowing dissolution and preceding termination, during the course
of which work in process is completed, partnership assets are
sold, creditors are paid, and the business of the partnership is

---

[3]A finer distinction is attempted by the Uniform Partnership Act (1997), not
adopted by this Commonwealth, which refers to "dissolution" of a partner-
ship and "dissociation" of a partner. See, e.g., Uniform Partnership Act
(1997), §§ 601, 701, and 801 comments, 6 (Part I) U.L.A., *supra* at 163-167,
175-179, 189-193.

brought to an orderly close." *Adams* v. *United States*, 218 F.3d 383, 388 (5th Cir. 2000).

We do not regard dissolution as immediately and necessarily moving the partnership into the stage of winding up, although winding up is certainly necessary before the partnership is ultimately terminated. In this case, the remaining partners chose to exercise their statutory right to continue the partnership business for the remainder of the partnership term, so the partnership business is not "winding up" and must therefore be treated as a going concern. Because the plaintiff cannot compel liquidation of the business at the point of dissolution, we read § 38 (2) (*c*) (II) as offering a nonliquidation based method of calculating the value of his partnership interest. The statute's exclusion of good will from the valuation of the wrongfully dissolving partner's interest supports this reading, as good will is an asset only if the partnership business is a going concern. Were it meant to regard the partnership business as assets to be liquidated, good will need not have been mentioned.

The plaintiff's interpretation of the statute would result in the application of liquidation value analysis in all situations, regardless whether the partnership business is continued for the remainder of the partnership term. This interpretation renders distinct provisions of the statute superfluous, and we reject it. *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000). We conclude that "at the dissolution" was included in § 38 (2) (*b*) as a reference for the point in time in the partnership's history to be considered during valuation of the departing partner's interest.

The judge's use of the going concern method of valuation is correct as a matter of law when the remaining partners choose to continue the business. Her use of a forty per cent minority shareholder discount is well supported by the evidence and therefore not clearly erroneous. We will not disturb her base valuation of $500,000 for the plaintiff's partnership interest at the point of the dissolution.

3. *Stipulation regarding fees.* The plaintiff challenges the award of attorney's and expert witness fees as part of the defendants' damages. The inclusion of these expenses was based on a stipulation of the parties. This court may vacate a stipula-

tion of the parties below if we determine that the stipulation is "improvident" or "not conducive to justice." *Loring* v. *Mercier*, 318 Mass. 599, 601 (1945); *Lincoln Elec. Co.* v. *Sovrensky*, 305 Mass. 476, 479 (1940).

The plaintiff, relying on *Shulkin* v. *Shulkin*, 301 Mass. 184, 191-192 (1938), claims the stipulation was improvident because, as a matter of law, such fees are not recoverable under G. L. c. 108A, § 38. The defendants, relying on the same case, take the position that the matter is undecided. We need not decide whether attorney's fees are a measure of damages under § 38 because parties are free to stipulate to a recovery of attorney's fees and other costs in situations where they are not provided by law. *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, 424 Mass. 430, 468 (1997); *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 322 (1992). The same rule applies to expert witness fees. *Boston* v. *United States Mineral Prods. Co.*, 37 Mass. App. Ct. 933 (1994).

There is evidence that the stipulation of the parties went through many drafts and was the subject of negotiation. The plaintiff did not challenge the admission of the defendants' evidence on fees nor request a finding regarding them. A stipulation made through negotiation and consistently maintained through litigation should not be set aside as improvident. See *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704, 713 (1988) (stipulation not improvident when "the product of careful negotiations"). In the circumstances of this case, we hold that enforcement of the stipulation is conducive to justice.

4. *Prejudgment interest.* The plaintiff challenges the award of prejudgment interest to the defendants on the damages owed them by the plaintiff, and the failure to award prejudgment interest to the amount awarded to him.

The plaintiff argues that G. L. c. 108A, § 42, which governs the rights of retiring or deceased partners against those continuing a partnership business, provides him a basis for recovery of interest. In relevant part, § 42 provides:

"When any partner retires or dies, and the business is continued under any of the conditions set forth in [§ 41]

(1)(2)(3)(5)(6), or [§ 38] (2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest . . . ."

The plaintiff claims that his departure from the partnership coinciding with the conclusion of his employment for the tenant, as a matter of equity, ought to be treated as a retirement. He asserts the purpose of the payment of interest under § 42 is to give the retiring partner a return on his rightful assets which the dissolved partnership is continuing to employ.

The plaintiff's departure from the partnership in contravention of the partnership agreement is not the equivalent of a legitimate retirement under § 42. When a partnership business is continued past the point of dissolution, whether under § 41 or after a wrongful dissolution under § 38 (2) (*b*), § 42 governs the rights of the parties who continue the partnership business, should they either die or exercise a right of retirement consistent with the partnership agreement. Neither § 42 nor § 38 provides interest on the buyout amount for the partner who caused a wrongful dissolution and who thereby departs the partnership.[4]

The plaintiff additionally argues that G. L. c. 231, § 6C, requires that he receive prejudgment interest because the judgment ordered that the defendants pay him monetary compensation and the entitlement was based on contractual obligations. He further argues that he was the only party to lose use of his money during the prejudgment period.

Section 6C provides in part:

"In all actions based on contractual obligations, upon a

---

[4]The Uniform Partnership Act (1997) does provide for prepayment interest to be paid on all dissociating partner's buyout amounts, regardless whether the dissociation was wrongful. Uniform Partnership Act § 701(b) 6 (Part I) U.L.A. 175 (Master ed. 2001). If the payment is not deferred, it must be adequately secured and bear interest. § 701(h), *id.* at 176. In the case of a wrongful dissociation, prepayment interest is to be paid also on the damages owed the partnership. § 701(c), *id.* at 176.

verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand."

Where the plaintiff's only right of payment arises from G. L. c. 108A, § 38, not from the partnership agreement, his claim is not based on a contractual obligation. This ultimate award of monetary compensation cannot be characterized as pecuniary damages, for the plaintiff, not the defendants, caused the wrongful dissolution that triggered the statute's application. This is bolstered by the language of § 38, which uses the word "damages" to describe harm caused to the partnership by the partner causing wrongful dissolution, and "value of his interest in the partnership" to refer to the buyout amount for the withdrawing partner. Because the plaintiff was not awarded damages, he is not entitled to interest under G. L. c. 231, § 6C.

Finally, the plaintiff contends the defendants were not entitled to prejudgment interest under § 6C. The plaintiff asserts that the defendants at no point lost the use of their money during the prejudgment period, because the amount he owes them in damages acts merely as a setoff against the larger amount the partnership owes him. As a result, despite the fact that the defendants were awarded damages arising out of the plaintiff's breach of a contractual obligation, he urges that they are not entitled to recover under G. L. c. 231, § 6C. We disagree.

The primary purpose of § 6C is "to compensate a damaged party for the loss of use or the unlawful detention of money." *Conway* v. *Electric Switch Corp.*, 402 Mass. 385, 390 (1988), and cases cited. "An award of interest is made 'so that a person wrongfully deprived of the use of money should be made whole for his loss.' " *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 841 (1986), quoting *Perkins Sch. for the Blind* v. *Rate Setting Comm'n*, 383 Mass. 825, 835 (1981). The defendants in this action represent the partnership. The partnership had to expend in excess of $150,000 in funds it otherwise would have had at its disposal in order to extricate the plaintiff from liability as required by G. L. c. 108A, § 38, and to litigate these actions. Those amounts were stipulated by the parties as all being elements of damages in this matter and the defendants

are therefore entitled to the statutory interest provided by G. L. c. 231, § 6C. Even if the damages were not based on contract but on statute, they would be entitled to the same interest pursuant to G. L. c. 231, § 6H.

5. *Conclusion.* For the reasons discussed above, we affirm the valuation of the plaintiff's partnership interest at $500,000, as well as the award of damages to the defendants in the amount of $150,153, with interest thereon at twelve per cent per annum. The plaintiff is not entitled to prejudgment interest.

*Judgment affirmed.*