# DECISIONS

OF THE

## APPEALS COURT

OF

## MASSACHUSETTS

COMMONWEALTH *vs.* MICHAEL D. BUSWELL.

No. 10-P-1556.

Plymouth. October 4, 2011. - December 12, 2012.

Present: BERRY, COHEN, & SIKORA, JJ.

Further appellate review granted, 464 Mass. 1102 (2013).

*Rape. Indecent Assault and Battery. Attempt. Search and Seizure,* Computer, Consent. *Practice, Criminal,* Stipulation, Motion to suppress. *Evidence,* Information stored on computer, Pattern of conduct.

At the trial of indictments charging, inter alia, attempted rape of a child and attempted indecent assault and battery on a child under age fourteen, the evidence was sufficient to sustain the defendant's convictions, in that the defendant undertook an overt act that put him so near to the completion of the crimes as to be guilty of attempt. [5-9] COHEN, J., dissenting.

At the trial of indictments charging, inter alia, attempted rape of a child, attempted indecent assault and battery on a child under age fourteen, and enticement of a child under age sixteen, a prosecutor's pretrial stipulation that the Commonwealth would not seek to introduce nude images of the defendant obtained from a search of his computer did not bar the Commonwealth from introducing such evidence, where the stipulation had been based on a case posture several months before the defendant raised an entrapment defense, at which time the evidence became relevant and probative on the question of predisposition [13-14]; further, there was no error in the admission of the defendant's prior sexually-based online communications

with three girls aged fifteen to seventeen, where such evidence was sufficiently similar in act and pattern to the crimes for which the defendant was indicted to be admissible to show predisposition [14-16].

INDICTMENTS found and returned in the Superior Court Department on August 11, 2006.

A pretrial motion to suppress evidence was heard by *Jeffrey A. Locke*, J., and the cases were tried before *Richard J. Chin*, J.

*Jason Benzaken* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

BERRY, J. After a jury trial in Superior Court, the defendant was convicted of enticement of a child under age sixteen, G. L. c. 265, § 26C; attempted rape of a child, G. L. c. 265, § 23; and attempted indecent assault and battery on a child under age fourteen, G. L. c. 265, § 13B.[1]

On appeal, the defendant argues principally that (1) the decision in *Commonwealth* v. *Bell*, 455 Mass. 408 (2009), compels the reversal of his convictions of attempted rape and attempted indecent assault and battery on a child; (2) nude images of the defendant obtained from a search of his computer, which were a part of Internet chat transmissions, should have been excluded from evidence at trial based on the prosecutor's statement at a pretrial hearing that the Commonwealth would be willing to stipulate not to introduce the nude computer images at trial;[2] and (3) evidence of sexually explicit online communications between

[1]The defendant was also convicted on two counts of attempted dissemination of materials harmful to a minor under G. L. c. 272, § 28. However, subsequent to the defendant's convictions, in *Commonwealth* v. *Zubiel*, 456 Mass. 27, 28 (2010), the Supreme Judicial Court held that "the definition of 'matter,' as defined in [the then-existing version of] G. L. c. 272, § 31, [did] not encompass electronically transmitted text, or 'online conversations,' for the purposes of prosecution for attempted dissemination of matter harmful to a minor under G. L. c. 272, § 28." In accordance with the *Zubiel* decision, the defendant's convictions under G. L. c. 272, § 28, would be subject to being vacated, and accordingly we do so. Given this disposition, we shall not further refer to these two convictions. (After the *Zubiel* decision, G. L. c. 272, §§ 28 and 31, were amended. See St. 2010, c. 74, § 2; St. 2011, c. 9, § 19. Those amendments do not retroactively apply to the defendant's case.)

[2]As is further discussed in part 3 and note 10, *infra*, the motion to suppress was denied not on grounds tied to the prosecutor's statement but, rather, because of the defendant's unqualified consent to a complete computer search, including an explicit acknowledgment by him that the computer evidence

the defendant and other young girls (not the subject of these indictments) should have been suppressed or, in the alternative, excluded from introduction at trial because these other acts were not sufficiently similar to the charged acts to constitute predisposition evidence that would rebut the defendant's entrapment defense and were highly prejudicial. For the reasons that follow, we affirm the convictions of child enticement, attempted rape of a child, and attempted indecent assault and battery on a child.

1. *Summary of the trial record.* In the spring of 2006, as part of an undercover Internet investigation, Plymouth County Deputy Sheriff Melissa Marino created an undercover online screen name, "melissaqt1995," to use the Internet communication services provided by Yahoo! Messenger, including public chat rooms and private instant messaging. After creating this screen name, Marino set up a profile, viewable to other users, and entered a public chat room, describing herself as a thirteen year old girl.

On May 10, 2006, Marino received a private message from a user with the screen name "redline_5k," later determined to be the defendant. Shortly into the conversation, the defendant asked Marino, "[Y]ou're 13?" Marino said that she was, and the defendant replied, "[I']m 20." The defendant asked Marino for a picture of herself, and Marino sent him a picture of herself at age thirteen. The defendant asked Marino if she would want to date him and indicated that this would involve sex. Marino told the defendant that she would like to date him and that she had had sex before. The defendant asked for further details about Marino's sexual history. The defendant described his own penis and told Marino that he knew "how to work it." The defendant became more provocative as the conversation went on, asking Marino, "[U] suck cock?" and whether she would give him a "bj" (initials referring to a "blow job" by oral sex) while he was

---

might be used against him. See notes 7 & 8, *infra.* The prosecutor's statement at the pretrial hearing that the Commonwealth would be willing to stipulate not to introduce at trial the nude photographic images of the defendant found in the first computer search preceded the defendant's notice of an entrapment defense. However, after the interposing of that defense, the nude photographs of the defendant, as well as sexually explicit chats and a Web camera video recording (Webcam) of the defendant masturbating (discovered in a second computer search), were introduced over objection in cross-examination of the defendant and in the Commonwealth's rebuttal case to demonstrate predisposition and, thereby, to counter the entrapment defense.

driving. The defendant also asked Marino if she would "suck it" after he urinated, if she would "fuck a fat guy" for $200, and if she would stay with him all night if he got them a hotel room.

A second Internet chat conversation occurred on May 15, 2006. During this conversation, Marino told the defendant that she planned to have a party that summer because her mother would be going out of town. The defendant responded, "[C]an I come over?" Marino said that he could. They began to discuss arrangements for the defendant to drive over to the apartment where she claimed to live. Marino told the defendant the general area where she lived and they discussed travel time. The defendant asked, "[C]ould I sleep over?" and Marino said that he could. Later in the conversation, the defendant asked if he could kiss Marino when they met, and she said that he could.

During a third Internet chat, the next day, May 16, 2006, the defendant returned to the subject of coming to Marino's apartment. The defendant again asked if he could sleep over when Marino's mother went out of town, and she told him again that he could. The defendant then stated that he slept naked and suggested that he would arrive naked when they met. The defendant then asked Marino if she would be naked too, and she said that she would wear something she could take off quickly. The defendant asked if they would have sex, and Marino said that they probably would.

Later that evening, in further Internet chat, the defendant asked Marino, "[W]ould you have sex with me tonight?" Marino said that she would and added that that night would be good because her mother was working and would not be home until after midnight. Marino gave the defendant an address and directions to her apartment on Frank's Lane in Hanover. The defendant wrote down the directions to the apartment and indicated that it was about a forty-four-minute drive for him. The defendant asked if he could call her when he was on his way. Marino gave him a telephone number. Later, while he was on the road driving to the apartment, the two spoke by telephone. Marino told him the two should meet at the Gamestop parking lot in Hanover before going to the apartment. While on the telephone, the defendant told Marino that he would not get her pregnant because he had a condom.

The defendant was arrested when he arrived at the Gamestop

parking lot. In his truck, police found the handwritten directions to the apartment address and a box containing an unopened condom. In a postarrest statement to the police, the defendant admitted that when the girl agreed to have sex that night, he "jumped in [his] truck and took off."

2. *The convictions of attempted rape and attempted indecent assault and battery on a child.* The attempt statute, G. L. c. 274, § 6, provides that "[w]hoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished . . . ." Judicial construction of the statute defines the elements of proof for the crime of attempt as follows: (1) intent to commit the predicate crime, (2) an overt act in furtherance of commission of the predicate crime, and (3) nonachievement of the predicate crime — that is, no actual completion of the predicate crime, but rather an attempt ending before the predicate crime can be fulfilled. See *Commonwealth* v. *Ortiz*, 408 Mass. 463, 470 (1990).

If the two elements of intent to commit the predicate crime and an overt act are present, steps taken in preparation to commit the predicate crime may constitute the crime of attempt under G. L. c. 274, § 6. "That an overt act although coupled with an intent to commit the crime commonly is not punishable if further acts are contemplated as needful, is expressed in the familiar rule that preparation is not an attempt. *But some preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act*, the intent to complete it renders the crime so probable that [an attempt will be deemed proved]" (emphasis supplied). *Commonwealth* v. *Peaslee*, 177 Mass. 267, 272 (1901), citing *Commonwealth* v. *Kennedy*, 170 Mass. 18, 22 (1897).[3]

In this case, reduced to essentials, the defendant's contention is that his preparatory steps were not sufficiently close to commission of the predicate crimes of rape of a child and indecent assault and battery on a child. Therefore, the defendant argues,

[3]See generally the dissenting opinion of Justice Gants in *Commonwealth* v. *Bell*, 455 Mass. at 423-436, providing historical analysis of Chief Justice Holmes's opinions in the *Kennedy* and *Peaslee* cases, as well as analysis of the progression in recent cases defining the elements of proof of the crime of attempt.

these attempt convictions should be reversed based on the decision in *Commonwealth* v. *Bell*, 455 Mass. 408 (2009) (*Bell*). The *Bell* case, as does this case, involved an undercover police investigation and a fictitious child victim.

The Commonwealth in its brief expresses agreement that *Bell* warrants reversal of the attempt convictions. However, notwithstanding that concession, we independently review to determine whether, as matter of law, reversal is compelled. "Confessions of error are, of course, entitled to and given great weight, but they do not 'relieve this Court of the performance of the judicial function.' " *Commonwealth* v. *Poirier*, 458 Mass. 1014, 1015 (2010), quoting from *Sibron* v. *New York*, 392 U.S. 40, 58 (1968). Based on that independent review, we are not persuaded that these two attempt convictions are subject to being vacated. To the contrary, we conclude that the present case is distinguishable because, unlike the *Bell* defendant, this defendant "undertook an overt act that put him so near — in time *or ability* — to the completion of the crime as to be guilty of attempt." *Bell*, 455 Mass. at 416. Further, as shall be discussed herein, there are a series of additional factors in this case — enhancing factors that prove the attempt offenses here but were not present in the *Bell* case.

In *Bell*, an undercover officer posed as a prostitute and offered a fictitious foster child for sexual services to the defendant. (For ease of reference, we shall refer to the undercover officer as "the undercover mother.") In a first telephone conversation, the defendant and the undercover mother arranged to meet the same morning in a convenience store parking lot. Both arrived at the designated site. The undercover mother told the defendant that the child was nearby, approximately one mile away, at "Elm Street, by Elm Park." *Id.* at 415. The defendant expressed continuing interest in having sex with the child and asked for details about the child's age, appearance, and sexual history. The undercover mother asked the defendant for $200 for access to the child, but the defendant tendered no money. As the defendant began to drive his car out of his parking spot, turning toward the exit of the lot in the direction of Elm Park, he was arrested and charged with attempted rape of a child. *Id.* at 411.

In holding that an attempt was not established, the Supreme

Judicial Court in *Bell* wrote that there was not sufficient closeness to the "(unachieved) goal of the consummated crime . . . [for] the defendant . . . to be held guilty of a criminal attempt." *Bell*, 455 Mass. at 415, quoting from *Commonwealth* v. *Hamel*, 52 Mass. App. Ct. 250, 258 (2001). The court reasoned that the commission of, and the completion of, the crime of rape of a child was too inchoate to constitute an attempt.

> "[C]ommission [of the crime of rape of a child] was still far from certain. The defendant was more than a mile from a vague location — 'Elm Street, by Elm Park' and he had not paid any money to [the undercover mother]. As in *Commonwealth* v. *Ortiz, supra,* the defendant did not know where exactly the child was located, as no evidence was presented that he knew where 'Elm Street, by Elm Park' was located. In following [the undercover mother], he could have decided to return to work and not commit the crime. In addition, there is no evidence that he had formulated a plan as to exactly where, or when, he would commit the crime."

*Bell*, 455 Mass. at 417.

As shall be seen in the distinguishing factors set forth below, the attempt evidence in this case goes markedly beyond the evidence present in *Bell*, and includes enhancing inculpatory factors beyond *Bell* that prove the offense of attempt under G. L. c. 274, § 6. We turn to a number of the important fact differentials.

A first distinguishing factor is that in *Bell* (as noted and quoted from the decision above), the court concluded that "there [was] no evidence that [the defendant] had formulated a plan as to exactly where, or when, he would commit the crime," 455 Mass. at 417, and that the defendant merely met the undercover officer to "arrange to have sex with a young child," *id.* at 415. In contrast to *Bell*, in this case, the "where and when" were definites, as was the defendant's formulated plan to have sexual intercourse with a child on the night in question. In *Bell*, the defendant did not "know where exactly" his child victim was located. *Id.* at 417. In contrast, in this case, the defendant knew of a destination address for the apartment on Frank's Lane in Hanover, and held handwritten directions to that apartment ad-

dress as he drove to the planned encounter. In *Bell*, the "when" of the planned offense was also indefinite. That also is not so in this case. In contrast to *Bell*, here, the defendant, with the intent to have intercourse with the child, had formulated an exact plan with details of when (that night) and where (the apartment) the sexual act of rape of a child would transpire.

A second distinguishing factor is that (unlike the single telephone call in the *Bell* case), in this case, the defendant had a series of Internet chats with the fictitious child victim, in which having sex together was the dominant theme. Over the course of the Internet chats, the defendant's formulated plan and the defendant's intent to have sex that night became solidified. Specifically, when told in a chat room conversation that this particular night would be a good one for the defendant to come to the apartment to have intercourse with the child, the defendant, to use his words, "jumped in [his] truck" to drive over. The defendant was clearly acting with intent to commit the predicate sex offenses and was proceeding in furtherance of a formulated plan to have intercourse with the child that night. To that end, as he drove to the meeting spot, the defendant brought a condom — as he said he would in his planning discussion with the undercover agent posing as the child.

A third distinguishing factor is that in *Bell*, there was an intermediary — the purported mother — who was supposed to, but did not, produce the victim at what was a show-up meeting for the defendant to check out the child and pay for future services. In contrast, in this case, no one stood as an intermediary between the defendant and his potential victim. To the contrary, both the defendant and the fictional child acknowledged that the defendant would have intercourse with the child that evening at the apartment.

A fourth distinguishing factor is that *Bell* involved a fee for future sex, which was to be paid by the defendant, in effect a condition precedent to the commission of the crime — which condition, as the court noted, was not met in *Bell*. In contrast, in this case, there was no fee condition precedent to the defendant having the intercourse intended for that evening.

For the foregoing reasons, we reject the defendant's argument and the Commonwealth's concession that *Bell* compels the reversal of the attempt convictions for rape of a child and indecent

assault and battery on a child.[4] Accordingly, we affirm these convictions.[5,6]

[4]Respectfully, the dissent has not, with any particularization, addressed the factual distinctions in the spectrum of attempt analysis concerning preparation, readiness to act, willingness to act, and fully executed actions that may be deemed to be in furtherance of a defendant's attempt to commit crimes, such as were charged in this case. For example, the dissent has not addressed the defendant's statements during the Internet chats and his actions, which are evidence of a formulated plan and intent to have intercourse with the thirteen year old that very evening. Further, the dissent does not address that the defendant was not negotiating any intervening conditions, because there was not an intermediary broker for sexual services by a child, as there was in *Bell.* Neither addressed in the dissent is evidence of the defendant's willingness, with no hesitation, to act, and to that end, the defendant's driving a significant distance — within a specific time frame (forty-four minutes) and with a specific known address in hand (on Frank's Lane in Hanover) — and his bringing (as he said he would) a condom so as to be ready for intercourse.

We also observe that, as noted by the dissent, the Commonwealth's concession in this case was based not only on *Bell,* but also on the nonprecedential, unpublished decision in *Commonwealth* v. *Pitts,* 76 Mass. App. Ct. 1118 (2010) (a memorandum and order of this court under rule 1:28). For the reasons we have discussed, *Bell* is factually and legally distinguishable from this *Buswell* case. Further, the Commonwealth states in its brief that *Pitts* is "indistinguishable" from *Bell.* Thus, the two cases on which the Commonwealth relies do not support the concession, which remains a questionable one.

[5]As addressed above, we have determined that the convictions of attempted rape of a child and attempted indecent assault and battery on a child should be affirmed because *Bell* is not controlling and the underlying offense elements of the criminal attempts were proved here.

However, we would further note that, with respect to the conviction of attempted rape of a child, the *Bell* case was decided by a split Supreme Judicial Court. Three of the justices of the court rejected the conclusion that the facts of the case did not constitute a criminal attempt under G. L. c. 274, § 6.

Justice Cordy, in dissent, joined by Justice Ireland, wrote as follows:

> "The evidence readily established that the defendant had the requisite intent to commit the crime of attempted rape. It also established that at the time of his arrest, he had moved beyond the mere preparation phase of the crime (identifying a supplier and negotiating the price and the sex acts for which the child was sought) and was on his way to a nearby location to commit the crime. These are sufficient acts toward the commission of the crime to satisfy the requirements of our attempt statute, G. L. c. 274, § 6, and come near enough to the accomplishment of the substantive offense to be punishable."

*Bell,* 455 Mass. at 423 (Cordy, J., dissenting in part, with whom Ireland, J., joined).

Justice Gants, in dissent, joined by Justice Ireland, also concluded that there

3. *Computer searches.* In a postarrest police interview, the defendant gave full and unqualified consent to the police to enter his home, to take possession of his computer, and to search

was sufficient evidence to convict the *Bell* defendant of attempt to rape a child under G. L. c. 274, § 6, but was of the view that a reversal and remand for retrial should follow because the jury were not properly instructed as to the element of dangerous proximity to commission of the predicate offense. *Id.* at 435-436. Justice Gants traced the element of dangerous proximity back to *Commonwealth* v. *Peaslee*, 177 Mass. at 272, and explained it as follows:

> "*Peaslee*'s dangerous proximity test essentially adds a fourth element to the statutory elements of an attempt, which applies only to the second category of cases: in order to convict a defendant who has been interrupted before completing his final act, the defendant must have come so near to the accomplishment of the crime that it is nearly certain that the crime would have been committed if the police or a third party had not intervened."

*Bell, supra* at 429 (Gants, J., dissenting in part, with whom Ireland, J., joined).

Justice Gants read the *Bell* majority as substituting a "physical proximity" test for the *Peaslee* "dangerous proximity" test, *id.* at 430, and expressed the following concerns:

> "Where, as here, no actual victim existed, [but only a fictitious child victim,] the defendant could never have reached a time and place where he was able to carry [out the crime]. [Under the majority's analysis,] [e]ven if an actual, potential child victim did exist, the Commonwealth, for all practical purposes, would not be able to prosecute any defendant for attempted rape because the police would not (and should not) endanger the psychological health of the child by permitting the defendant to reach the place where the defendant could commit the sexual crime against the child."

*Id.* at 432 (Gants, J., dissenting in part, with whom Ireland, J., joined) (citation and quotation marks omitted).

Given the Commonwealth's concession in this case — which, for the reasons stated, we do not accept — it would appear that Justice Gants's concerns were prescient. Such a prosecutorial concession reflects Justice Gants's concern that the *Bell* case may be read by the Commonwealth to prevent the prosecution and conviction of attempted crimes, such as the instant one, in which there are undercover police investigations using a fictitious child victim.

[6]The discussion in the dissent of the legislative history and internal government memoranda on the child enticement statute, which was enacted after *Commonwealth* v. *Gorassi*, 432 Mass. 244 (2000) (reversing convictions of assault with intent to commit kidnapping), with due respect, do not seem directly applicable to the attempt questions involving rape and indecent assault and battery presented in this case.

it. Indeed, the defendant specifically acknowledged that evidence distilled from the computer could be used against him in court.[7]

Given that consent, the police retrieved the defendant's computer and created a forensic copy of its hard drive. (The computer itself was locked in a police storage facility.) Notwithstanding the defendant's consent, as an extra measure, police also obtained a search warrant for the computer. An initial search of the computer hard drive yielded the chat conversations with the undercover agent that were the subjects of this case, as well as a picture of the agent at age thirteen that she had sent to the defendant. Also discovered during this initial postarrest, consented-to computer search were seven sexually explicit nude photographic images of the defendant.

The defendant filed a motion to suppress the aforedescribed evidence obtained from the initial computer search. The thrust of the defendant's suppression motion was that the computer search exceeded the parameters of the warrant. The judge denied the motion, ruling that, in light of the defendant's unfettered consent to the computer search, the search was not limited by the warrant parameters, and accordingly, the defendant's suppression challenge based on the search warrant terms was unavailing.[8]

Several months after the suppression hearing, the defendant

---

[7]At the police interview, the defendant's consent to the computer search was as follows.

OFFICER:     "What we want to do is we want to go to Norton and get that computer. Would you consent to us doing that?"

DEFENDANT: "Yes, sir."

OFFICER:     "You would consent to us going into your room, taking that computer and seizing it as evidence in this criminal case to be forensically examined and potentially used against you in court?"

DEFENDANT: "Yes, sir."

[8]In denying suppression, the judge found as follows:

"I find on the evidence before me, that the defendant in fact gave voluntary and unconstrained consent to the police to travel to the defendant's home in Norton and to take possession of his computer for the purpose of forensic examination. Accordingly, I find that the police took — entered the defendant's home and took that computer with consent, which is a recognized exception under both the Fourth Amendment and

notified the Commonwealth that he intended to present an entrap-
ment defense. At the prosecutor's direction, the police conducted
a second search of the forensic copy of the computer hard drive,
looking for, among other things, evidence that might rebut a
claim of entrapment by showing the defendant's predisposition
to commit the crimes charged. This second (post-entrapment
notice) computer search produced additional online conversa-
tions in which the defendant had chatted with three other young
girls, aged fifteen to seventeen. These other Internet chats
preceded the Internet conversations and meeting in May, 2006,
which were the subject of the instant prosecution and resulting
convictions. In these chats with other young girls, the defendant
described in sexually explicit graphic detail the sexual excite-
ment he derived from sexual encounters with what he described
as "underage" girls. There was also reference to nude images
of the defendant, and to a Web camera video recording (Web-
cam) of him masturbating.

The defendant claims that the nude photographic images of
him, the other sexually explicit chats, and the Webcam should
have been excluded from evidence at trial. His principal conten-
tions are that (1) the introduction at trial of the evidence found
in the first postarrest computer search was barred by the
prosecutor's statement at the pretrial suppression hearing that
— apart from the Internet chats with the undercover officer
that were the subject matter of the indictments — the prosecutor
was willing to stipulate that the Commonwealth would not seek
to introduce at trial the nude images of the defendant discovered
in this search, and that (2) the earlier sexually explicit Internet
communications with three other young girls and the Webcam
discovered in the second computer search were not sufficiently
similar to the crimes for which the defendant was on trial to
qualify as evidence of the defendant's predisposition to commit
the indicted sex crimes.[9]

under Article 14, and that there was no necessity in this case for a
search warrant.

"Having so ruled, I need not reach issues relating to the search warrant
or to the scope of the search warrant."

[9]In addition to the above described two contentions, the defendant's brief
— in only a few conclusory paragraphs, bereft of legal analysis and with only

a. *The first computer search and the stipulation.* We first address the prosecutor's statement made at the suppression hearing following the first computer search. The prosecutor's statement was, "I would be willing to stipulate. I won't submit those items at trial" — referring to the nude photographic images of the defendant. The Commonwealth disputes that this constituted a formal "stipulation." We disagree. The prosecutor's statement explicitly referenced a stipulation, and the suppression judge so understood, stating that the Commonwealth was "conceding or stipulating" that the nude images would not be used at trial.[10]

However, even if deemed to be a stipulation, "[t]his court may vacate a stipulation of the parties below if we determine that the stipulation is 'improvident' or 'not conducive to justice.' " *Anastos* v. *Sable*, 443 Mass. 146, 152-153 (2004), quoting from *Loring* v. *Mercier*, 318 Mass. 599, 601 (1945). That rule applies here. The stipulation was based on a case posture *before* the defendant gave notice of an entrapment defense. In the unique circumstances here presented, the stipulation is bounded by the context of the case posture within which it was given. The landscape, however, changed with notice of the entrapment defense. Hence, the prosecutor's statement of a willingness to stipulate not to use the nude images of the defendant cannot be deemed to be binding with respect to a future entrapment defense not known at the time of the stipulation. Specifically, when the

---

one case citation involving a search — purports to raise an across-the-board suppression challenge to all the computer evidence. This broad-reaching suppression contention stated in only a cursory manner does not meet the standards for appellate briefing and argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In addition, for the first time on appeal, the defendant contends that the second computer search was invalid because the Commonwealth failed to seek a second search warrant. This issue was not presented in the prior proceedings and is not preserved for appellate review. In any event, we note only that neither contention accounts for the defendant's consent to a general computer search for evidence that could be used against him in court. See notes 7 & 8, *supra.* Compare *Commonwealth* v. *Hinds*, 437 Mass. 54, 58-59 (2002), cert. denied, 537 U.S. 1205 (2003) (where defendant consented to search of computer for electronic mail, limitation was content-based and no locations within computer were off limits).

[10]As previously noted, however, the judge denied suppression on grounds not predicated on the prosecutor's statement but, rather, on the basis of the defendant's consent. See notes 7 & 8, *supra.*

defendant raised an entrapment defense several months after the pretrial suppression hearing, the sexually explicit material seized from the searches of the computer became relevant and probative upon the question of the defendant's predisposition.

An entrapment defense may be negated by evidence that, notwithstanding any acts of inducement by the government — including such inducement as may occur in an undercover investigation, such as this one — a defendant was "ready and willing to commit the crime." *Commonwealth* v. *Miller*, 361 Mass. 644, 651 (1972) (citation omitted). In other words, such evidence is relevant and material to the Commonwealth's burden to disprove that the defendant was "reluctantly 'persuade[d] [by the government's inducement] to turn from a righteous path to an iniquitous one.' " *Commonwealth* v. *Doyle*, 67 Mass. App. Ct. 846, 852 (2006), quoting from *United States* v. *Gifford*, 17 F.3d 462, 468 (1st Cir. 1994).

For these reasons, we are not persuaded that the prosecutor's expression of a willingness to stipulate not to use the nude images of the defendant at a hearing before entrapment was a contested issue barred the introduction of the photographs at trial.

b. *Similarity and predisposition in the computer evidence concerning other acts.* The defendant also contends that separate evidence of other conduct concerning his sexual Internet chat and transactions with the three other young girls, introduced to show the defendant's predisposition to commit the crimes charged — including, but not limited to, sexually explicit online conversations with these other young females aged fifteen to seventeen, and the nude images of and the Webcam of the defendant masturbating — was not sufficiently similar to be used as predisposition evidence in cross-examination of the defendant and in the Commonwealth's rebuttal case.

"The fact that government agents merely furnish opportunities or facilities for committing the offence does not defeat prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. . . . When evidence of inducement has been entered, the burden rests upon the Commonwealth to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime." *Commonwealth* v. *Miller*, 361 Mass. at 651-652. To carry its burden, the Com-

monwealth may demonstrate the defendant's predisposition through evidence of the defendant's involvement in similar crimes. *Commonwealth* v. *Disler*, 451 Mass. 216, 233 (2008). "Those prior criminal acts, however, must be similar to the crimes for which the defendant is on trial. . . . Only those crimes which are similar will have probative value sufficient to outweigh the strong likelihood of prejudice to the defendant." *Commonwealth* v. *Vargas*, 417 Mass. 792, 795 (1994).

We conclude in this case that there was sufficient similarity in act and pattern of Internet chat between this other conduct evidence and the indicted crimes being tried. The defendant's other sexually based online communications and his transmission of sexually explicit images demonstrated an abiding intent and desire on the defendant's part to engage in sexual acts with young girls and a willingness to act on that desire, if given the opportunity. For example, in one online chat, the defendant asked a fifteen year old female for a "good bj" (meaning blow job by oral sex, the same act referred to by the defendant in Internet chat in the instant case). In another Internet chat, the defendant told a sixteen year old female that he was sexually excited by her because she was under the age of legal consent. The defendant also told the sixteen year old that he would send her a vibrator and that he would come to her house naked. The defendant offered to let the sixteen year old watch him masturbate via a Webcam transmission. The defendant then conducted a role play, wherein the sixteen year old played an eight year old girl and the defendant played her "horny father." In an online chat, the defendant told a seventeen year old girl that he became sexually excited by the age of girls when it was illegal for them to have sex. The defendant also made other evocative references to sexual activity with the seventeen year old, including references to her "tight virgin pussyness," and his own "rock-hard cock." In addition, the defendant sent the seventeen year old images of himself masturbating in the nude.

The case of *Commonwealth* v. *Disler*, *supra*, further supports admission of the other bad act evidence in this case. In *Disler*, a woman reported the forty-three year old defendant to the police after an online conversation with him, during which the defendant admitted to having had sexual contact with children in the

past and invited the woman to participate in sexual acts with young children. An undercover officer then entered the chat room, pretended to be a fourteen year old girl, and initiated a conversation with the defendant. Over multiple conversations, the defendant discussed provocative sexual topics, including the specific sexual acts he intended to perform on her once they met. 451 Mass. at 218-220. On appeal, the court held that the Commonwealth's burden of proving predisposition was "easily met" because "[t]he defendant's Internet exchanges with the woman who brought him to the attention of police, in which the defendant admitted to molesting children and invited the woman to share in his sexual exploits with children, was enough to show that the defendant had a predilection for the crime."[11,12] *Id.* at 233.

4. *Conclusion.* The judgments on the indictments charging enticement of a child under age sixteen, attempted rape of a child, and attempted indecent assault and battery on a child under age fourteen are affirmed. The judgments on the indictments charging attempted dissemination of materials harmful to a minor are reversed, the verdicts are set aside, and the indictments on those counts shall be dismissed.

*So ordered.*

---

[11]This also disposes of the defendant's related argument that there was insufficient evidence to prove that he was predisposed to commit the crimes charged.

[12]The defendant suggests that the trial judge abused his discretion by allowing the prosecutor to refer to the females in the prior online conversations as "underage." We see no such abuse of discretion. In an Internet chat, the defendant referred to special pleasure in having sex with "underage" girls. The evidence also indicated from his chat notes that the defendant believed that both the sixteen year old and the seventeen year old appearing in those conversations were "underage." Moreover, the defendant stated in his conversation with the seventeen year old that it was the fact that it was illegal for him to have sex with her that gave him sexual excitement.

In addition, we note that the defendant was also being tried on indictments for two counts of attempted dissemination of materials harmful to a minor. G. L. c. 272, § 28. For purposes of that crime, "underage" means under the age of eighteen. G. L. c. 272, § 31. Accordingly, the prosecutor's use of the term "underage" was appropriate in any questions he posed surrounding the images of the defendant masturbating in the nude that the defendant sent to the seventeen year old and offered to send to the sixteen year old.

COHEN, J. (dissenting in part). I respectfully dissent insofar as the majority affirms the defendant's convictions of attempted rape of a child and attempted indecent assault and battery on a child under the age of fourteen. In my view, under long-standing legal principles — recently reiterated by the Supreme Judicial Court in *Commonwealth* v. *Bell*, 455 Mass. 408 (2009) (*Bell*)[1] — the defendant's actions did not come near enough to the accomplishment of the substantive offenses to be punishable as attempts.

The Commonwealth concedes this point in its brief, stating: "After [the defendant's] convictions in this case, the Supreme Judicial Court issued the decision in . . . *Bell*, holding that there is insufficient proof of attempt when a person arranges to have sexual intercourse with a child under the age of 16 and then travels to a prearranged location in a parking lot, without any further action. . . . *Bell*, 455 Mass. at 415-416. The Commonwealth cannot distinguish the facts of this case from . . . *Bell*. Also *Commonwealth* v. *Pitts*, 76 Mass. App. Ct. 1118, [further appellate review] denied, 458 Mass. 1109 (2010) (unpublished; indistinguishable)."

Unlike the majority, I consider the Commonwealth's confession of error to be well taken; also unlike the majority, I do not understand the Commonwealth's position to turn on the fact that the child whom the defendant planned to meet was fictitious. See *ante* at note 5. The Commonwealth's concession is simply an acknowledgment that criminal liability for attempt requires closer temporal and physical proximity to the commission of the substantive crimes than is present in this case.

As explained in *Bell*, Massachusetts has long given the statutory crime of attempt, G. L. c. 274, § 6, a narrow interpretation. "In Massachusetts, a defendant must have the present opportunity to commit the substantive crime." 455 Mass. at 415. Put another way, "[t]he defendant must have had 'a present intent to accomplish the crime without much delay, and to have had this intent *at a time and place where he was able to carry it out*'" (emphasis supplied). *Id.* at 416, quoting from *Commonwealth* v. *Peaslee*, 177 Mass. 267, 273-274 (1901). "[W]e look to the

---

[1]As noted by the majority, *Bell* was a split decision. It is, of course, the majority opinion that must guide our decision here.

actions left to be taken, or the 'distance or gap between the defendant's actions and the (unachieved) goal of the consummated crime — the distance must be relatively short, the gap narrow, if the defendant is to be held guilty of a criminal attempt.' " *Bell, supra* at 415, quoting from *Commonwealth* v. *Hamel*, 52 Mass. App. Ct. 250, 258 (2001). When we apply these principles here, despite the details identified by the majority in an effort to distinguish *Bell,* the fact remains that the defendant was intercepted at a point in time and place where the commission of the crimes of rape and indecent assault and battery remained too uncertain and remote to support convictions for attempt.

Other jurisdictions may take a more expansive view of attempt; however, as observed in *Bell,* any effort to broaden the scope of our attempt statute beyond its traditional, narrow interpretation is a matter committed to the Legislature. *Id.* at 414. Significantly, despite having had opportunities to make such a change, the Legislature has chosen not to do so. As noted in *Bell,* in 1972, the Legislature considered legislation that would have brought Massachusetts law closer to the broader formulation of attempt contained in the Model Penal Code, but did not enact such a statute for general attempt. *Id.* at 415 n.14. Even more telling is that, in 2002, the Legislature specifically addressed the failure of existing law to criminalize predatory behavior against children that did not rise to the level of attempt and, rather than making changes to the general attempt statute, created the new crime of child enticement. See G. L. c. 265, § 26C, inserted by St. 2002, c. 385, § 3; *Commonwealth* v. *Disler,* 451 Mass. 216, 229 (2008) (child enticement statute "enacted as part of comprehensive legislation to protect children from predators").

The impetus for the child enticement statute was the decision of the Supreme Judicial Court in *Commonwealth* v. *Gorassi,* 432 Mass. 244 (2000), in which the court held the evidence to be insufficient on two of three convictions of assault with intent to commit the felony of kidnapping, because, as to those indictments, the Commonwealth had failed to introduce any evidence that the defendant either attempted a battery or placed his potential victims in fear of imminent battery. *Id.* at 249-250. Even beyond concern about the specific circumstances of

*Gorassi*,[2] however, advocates for remedial legislation focused broadly on what was understood to be a gap in existing law that allowed predators to escape punishment for luring children with the intent to commit sex crimes.

A November 20, 2002, memorandum from the Executive Office of Public Safety addressed to the Governor's Legislative Office and the Governor's Legal Office, evaluating the enticement statute as enacted by the Legislature, stated, inter alia: "The creation of the enticement crime is critical to public safety. At least one serious, frightening, and common enticement type offense was overturned by the Supreme Judicial Court because of the absence of this crime [citing to *Gorassi*]. Additionally, this crime will clearly define the prosecution of sex offenders who attract vulnerable children in Internet instant-messaging systems or 'chat rooms' and convince the unwitting children to meet at an arranged location where the offender is prepared to engage in sex crimes. While many other jurisdictions have such a crime . . . Massachusetts does not[,] which has hampered prosecution of these dangerous offenders . . . ." Memorandum from Noelle Logue, Executive Office of Public Safety, to Liz Swieszkowski, Governor's Legislative Office, & Sara Lombardi, Governor's Legal Office (Nov. 20, 2002) (on file with the Massachusetts Archives).

Similarly, a November 27, 2002, memorandum to Acting Governor Jane Swift from her legal counsel, recommending that she sign the child enticement bill, explained: "Currently, the Commonwealth does not have a criminal law pertaining to the enticement of a child for the purpose of committing a crime. In cases where an individual entices a child or preys on a child's psychological state without meeting the elements of an assault or attempted kidnapping, prosecutors are unable to establish criminal culpability [citing to *Gorassi*]. Moreover, the use of the Internet as a mechanism to lure children to locations for the

---

[2]The evidence in *Gorassi* was that the defendant had walked behind two young girls in the hallways of a hotel, following them for a total of 326 feet. He then caught up to them, inquired whether they knew where the outdoor pool was located, and asked them to come with him and show him. When one of the girls said no, the defendant asked the girls their names, and if they wanted to see something pretty. The girls then ran back to their rooms. *Gorassi*, 432 Mass. at 245.

purposes of committing a crime further highlighted the need for an enticement law, leading [to introduction of the legislation] in 2001." Memorandum from David L. Veator, Deputy Chief Legal Counsel, & Jed M. Nosal, Deputy Legal Counsel, to Jane M. Swift, Acting Governor, Commonwealth of Mass. (Nov. 27, 2002) (on file with the Massachusetts Archives).

Here, the defendant was properly charged with and convicted of child enticement. Accordingly, as the Legislature intended, he will not go unpunished even though the facts of his case do not satisfy the criteria for conviction of attempted rape or attempted indecent assault and battery.

In short, under well-established law, and as conceded by the Commonwealth, I would hold that the defendant's convictions on the indictments charging him with attempted rape of a child and attempted indecent assault and battery on a child under the age of fourteen must be reversed.