LEATHERBEE MORTGAGE COMPANY, INC. *vs.* RICHARD D. COHEN. No. 92-P-1565. August 26, 1994. *Broker*, Mortgage, Commission. *Corporation*, Corporate entity. *Judge. Practice, Civil*, Disqualification of judge, Stipulation.

Among the staple triangles of the law are those made up of two brokers and a customer. So here. After a jury-waived trial, a judge of the Superior Court found that Leatherbee Mortgage Company, Inc. (Leatherbee), had been the efficient cause of securing mortgage financing with General Electric Credit Corporation (GECC) for the acquisition by Richard D. Cohen in 1984 of an apartment complex (the Waterview, consisting of 1020 units) in Framingham. On the basis of that ultimate finding, the judge

---

determined that Leatherbee was entitled to a broker's fee of $425,000,[1] the same amount which Cohen had paid to another mortgage broker, Omni Funding Corporation (Omni). There was a judgment in favor of Leatherbee against Cohen in the amount of $425,000. From that judgment, Cohen has appealed.[2] We affirm.

We have the benefit of detailed findings of fact by the trial judge. Those findings of fact we accept unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). The first two contentions of Cohen on appeal are fact driven, i.e., the applicable law is settled. Our task has been to review the testimony and exhibits to determine whether the subsidiary and ultimate findings of fact made by the judge were warranted.

1. *Whether Cohen, rather than a corporation he controlled, was liable.* In arguments in favor of a directed verdict, the defendant's counsel in tangential fashion offered the argument that if anyone were liable to Leatherbee for a broker's commission or fee, it was not Richard D. Cohen as an individual, but rather "his" corporation, Cohen Properties, Inc. That position is now put frontally and more urgently on appeal. It is unmistakable from the testimony that, in his business conversations with William Leatherbee, Jr., and Richard Ashworth, both employees of Leatherbee, Cohen failed to send up any warning signal that he was acting on behalf of his corporation, of which he had pervasive control, rather than in his own behalf. To the extent that Cohen sometimes operated under the business name Cohen Properties, the "Inc.," was omitted more often than not. The loan was not sought for Cohen Properties, Inc., but for entities to be formed to acquire the Waterview apartments in Framingham. None of those was organized as a corporation. Indeed, Federal income tax considerations would in 1984 ordinarily have militated against use of the corporate form for the investment contemplated. The record supports a finding that Cohen as an individual controlled Cohen Properties, Inc., and acted interchangeably with it and with entities organized for acquisition of the properties. Formal barriers were not observed and the presentation to persons dealing with Cohen was sufficiently blurred as to the identity of the customer that separate entities could be disregarded and the individual held to be the proper defendant. See *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 619-620 (1968); *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 732-738 (1991), and cases and authorities there cited. The judge had ample basis in the record to conclude that Cohen was individually liable for a mortgage broker's fee, if one was owing.

2. *Who was the efficient cause.* Here, the evidence was more obviously conflicting. If believed, there was evidence that Leatherbee was the first to make a documented presentation to GECC that included the economic

---

[1]This was one percent of the mortgage financing obtained, $42,500,000.

[2]The judge ordered judgment for the defendant Cohen on a claim under G. L. c. 93A.

data which described a participation loan as a sound approach for an institutional lender-investor. The judge made a subsidiary finding to that effect. The significant economic information was imparted on July 12, 1984, Leatherbee and Cohen first having spoken about the project on June 28 or 29, 1984. The reviewing officer for GECC, the judge warrantably found, did not receive any written economic information until July 24, 1984. By that time, GECC had become uneasy about two brokers being in the field and asked Cohen for a letter telling it who had authority to deal on his behalf. Cohen sent a letter authorizing Omni on July 24, 1984.

Who is the efficient cause of a transaction on which a broker's commission is payable is a question of fact for the trier — here the judge. *Chisholm* v. *McCarthy*, 325 Mass. 72, 75 (1949). *Kaplan* v. *Wenz, Inc.*, 331 Mass. 480, 486 (1954). *Julius Tofias & Co.* v. *John B. Stetson Co.*, 19 Mass. App. Ct. 392, 395-396 (1985). The judge found that the material financial considerations were first discussed with GECC by Leatherbee and that the loan ultimately made followed the pattern devised by Leatherbee. The record did not compel that finding, but it surely warranted it. The judge found that what Omni did thereafter did not break the chain of causation which led from Leatherbee's exertions to the deal that was made. Compare *Bonin* v. *Chestnut Hill Towers Realty Co.*, 14 Mass. App. Ct. 63, 69-70 (1982).

3. *Claim of conflict of interest by the judge.* On the second day of trial, Cohen's counsel brought to the judge's attention that Cohen had been and was a "periodic" client of a law firm, Friedman and Atherton, in which the judge's husband was a partner. First the judge discussed the issue of recusal with counsel, who requested that she not disqualify herself. The judge than asked to speak to Cohen and William Leatherbee, who said they were aware of the somewhat tenuous connection (Friedman and Atherton had not at any time had anything to do with the Waterview project) and desired that the judge not recuse herself. The judge thereupon dictated into the record the communication she had received, and the discussions she had carried on with counsel and the parties. She further added for the record that she was free of any bias as to either party, disinterested in the result, and capable of ruling impartially in the case. See S.J.C. Rule 3:09, Canon 3(C)(1), as amended, 382 Mass. 811-812 (1981); *Parenteau* v. *Jacobson*, 32 Mass. App. Ct. 97, 103-104 (1992).

Having lost on the merits after trial, Cohen, by a motion under Mass.R.Civ.P. 60(b)(6), 365 Mass. 828 (1974), argued that the trial and, therefore, the judgment, was flawed because the lawyers for the parties had not, conformably with S.J.C. Rule 3:05, Canon 3(D), as amended, 382 Mass. 813 (1981), agreed *in writing* that the judge's relationship was immaterial or that her financial interest was insubstantial. The judge denied the motion, and rightly so. Cohen was not described as a major client upon whom Friedman and Atherton greatly relied in terms of that firm's prosperity. Nor, so far as the record discloses, had the judge's husband worked

on any Cohen cases. It may also be said that there is something unseemly in a party urging a judge not to recuse herself, putting his opponent to trial, and, after unpleasant results are in, raising the cry of conflict — this in a situation where the hypothetical conflict favored Cohen. Above all, the transcription in the record of the interviews with counsel and parties and the reasons that the judge thought herself free to continue with the case satisfy the substance of Canon 3(D). The disavowal by counsel and the parties of doubt about the judge's impartiality was memorialized in written form. Only the actual signatures of the lawyers were lacking and neither the parties nor the judiciary should be imposed upon by reason of that purely formal step not having been taken.

In another after-the-fact attack on the judge's impartiality, Cohen advances the claim that Leatherbee had been a client at an earlier time of Friedman and Atherton. As this was concededly unknown to the judge and reasonably is not something she ought to have known, it is not necessary to fence further with Cohen's insubstantial claim that this was a defect in the proceedings. We think nothing to the contrary is expressed in *Liljeberg* v. *Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988), in which the decision of the judge would have had a major impact on an institution of which the trial judge was a trustee.

4. *Whether a stipulation was rightly vacated.* Before trial began, Leatherbee, who had given prior notice to Cohen of intent so to do, moved to vacate stipulation number 12, one of twenty-six stipulations. In stipulation number 12, the parties said: "Leatherbee Mortgage was informed by McManama [an officer of GECC], prior to and/or during Leatherbee Mortgage's only meeting with GECC, that GECC had previously been contacted by Omni Funding." After hearing counsel, the judge allowed the motion to vacate stipulation number 12 and, at trial, received conflicting evidence on the point of fact involved in the stipulation. Cohen urges that vacating stipulation number 12 was an abuse of discretion requiring reversal. A reason had been advanced for possible oversight by original trial counsel for Leatherbee, namely his poor health at the time (that lawyer died prior to trial). Adequate notice of intent to withdraw the stipulation was given, and there is no persuasive evidence that Cohen was prejudiced by — nor at the time did he claim to be prejudiced by — its withdrawal. The judge did not abuse her discretion. A trial judge or an appellate court "may vacate a stipulation made by the parties if it is deemed improvident or not conducive to justice." *Loring* v. *Mercier*, 318 Mass. 599, 601 (1945). *Houghton* v. *Rizzo*, 361 Mass. 635, 637 n.1 (1972). Compare *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704, 712-713 (1988); *Atlantic Pipe Corp.* v. *R.J. Longo Constr. Co.*, 35 Mass. App. Ct. 459, 464-465 (1993).

To that we add that the point of fact involved in stipulation 12 is far from a dispositive one.

*Judgment affirmed.*

*John G. Fabiano* (*Kelly J. Voight* with him) for the defendant.
*Gary F. Snerson* (*Melvin Newman* with him) for the plaintiff.