## COMMONWEALTH vs. MICHAEL D. BUSWELL.

Plymouth. January 6, 2014. - May 13, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Attempt. Rape. Indecent Assault and Battery. Obscenity,* Dissemination of matter harmful to minor. *Enticement of Minor. Evidence,* Information stored on computer, Prior misconduct. *Search and Seizure,* Computer, Probable cause, Consent. *Probable Cause. Consent. Entrapment. Practice, Criminal,* Motion to suppress, Stipulation.

At the trial of indictments charging the defendant with attempted rape of a child under the age of sixteen and attempted indecent assault and battery on a child under the age of fourteen, the Commonwealth introduced insufficient evidence of an overt act toward the commission of the underlying offenses to support the convictions, where, although the evidence sufficed to show that the defendant intended to have sex with the intended victim (who the defendant thought was a thirteen year old girl) in her apartment on the night of his arrest, it was still far from certain that he would go through with the acts, in that he would have had to engage in additional efforts to persuade the victim to have sex with him; and where the record did not reflect that the defendant previously had engaged in intercourse with a child under sixteen years of age. [96-102]

At a criminal trial, evidence that the defendant sent "instant messages" via the Internet to the victim (who the defendant thought was a thirteen year old girl) was insufficient to support convictions on indictments charging the defendant with attempted dissemination of matter harmful to a minor, where, at the time, G. L. c. 272, § 28, did not encompass electronically transmitted text. [102-103]

At the trial of an indictment charging the defendant with enticement of a child, the judge did not abuse his discretion in permitting the Commonwealth to introduce nude photographs of the defendant found by police officers on the defendant's personal computer, despite a pretrial stipulation that it would not do so, where the rationale for the stipulation (i.e., that the photographs constituted inadmissible propensity evidence) ceased to exist once the defendant notified the Commonwealth that he intended to argue entrapment, and where the defendant could not have relied to his prejudice on the stipulation, given that the Commonwealth notified him before trial that it planned to introduce the photographs in order to rebut his entrapment defense [103-105]; further, the police officers' search of the defendant's computer was not improper, where the defendant had given voluntary and unconstrained consent to the forensic examination of his computer and had placed no limits on its scope, and where the additional cautionary step taken by police of obtaining a search warrant did not narrow the scope of

the search permitted by his consent [105-106]; finally, after introduction of evidence of government inducement, the Commonwealth properly introduced evidence of the defendant's online conversations with young women other than the victim, along with the nude photographs, to meet its burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime, where those conversations were sufficiently similar to the crime charged to have warranted consideration by the jury, and where, with respect to the photographs, the jury could have found that, by sending such images to a seventeen year old girl, the defendant intended to disseminate matter harmful to a minor, which is one of the offenses set forth in the definition of the crime of enticement of a child [106-107].

INDICTMENTS found and returned in the Superior Court Department on August 11, 2006.

A pretrial motion to suppress evidence was heard by *Jeffrey A. Locke*, J., and the cases were tried before *Richard J. Chin*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jason Benzaken* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

DUFFLY, J. A Superior Court jury found the defendant guilty on one indictment charging enticement of a child under the age of sixteen, G. L. c. 265, § 26C, and four indictments charging attempts to commit certain offenses, G. L. c. 274, § 6.[1] The offenses underlying the convictions of attempt were rape of a child under the age of sixteen, G. L. c. 265, § 23; indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B; and two charges of disseminating matter harmful to a minor, G. L. c. 272, § 28. The defendant's motions for required findings of not guilty were denied. In his direct appeal, the defendant argued that the Commonwealth failed to provide sufficient evidence of an overt act, a necessary element to establish attempted rape of a child and attempted indecent assault and battery on a child, and that his electronically transmitted "conversation" did not constitute "matter" under the terms

---

[1]General Laws c. 274, § 6, provides in part: "Whoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished . . . ."

of G. L. c. 272, § 28, so that the Commonwealth had not met its burden of proof to establish dissemination of matter harmful to a minor. The defendant also argued that certain evidence obtained following a forensic examination of his computer should have been suppressed or excluded at trial, and that the Commonwealth failed to provide evidence of a predisposition to commit the charged offenses sufficient to overcome his defense of entrapment. In a divided opinion, a majority of the Appeals Court affirmed the convictions of enticement of a child, attempted rape, and attempted indecent assault and battery, and reversed the convictions of attempted dissemination of matter harmful to a minor. *Commonwealth* v. *Buswell*, 83 Mass. App. Ct. 1, 16 (2012). We granted the defendant's application for further appellate review. For the reasons set forth below, we affirm the conviction of enticement of a child and reverse the convictions of attempt.

*Background.* In May, 2006, Plymouth County deputy sheriff Melissa Marino conducted an undercover investigation, using the Internet, of individuals seeking to have sex with minor children. Posing as a thirteen year old girl, she set up an online profile under the screen name "melissaqt1995." Using this screen name, Marino engaged in three electronic "instant message"[2] conversations with the defendant; the transcripts of these conversations were introduced at trial.

On May 10, 2006, Marino used the online profile to enter a "Massachusetts-based romance chat room." The defendant, who was twenty years old at the time, sent an instant message to Marino under the screen name "redline_5k," thereby initiating a conversation with her. Early in that conversation, Marino described herself as being thirteen years old, and the defendant acknowledged her age. The defendant requested a photograph of Marino, and Marino electronically transmitted a photograph of herself at age thirteen. After some discussion, the defendant jokingly asked, "[D]on[']t you just [want to] date me?" When

---

[2]"Instant messaging" represents "a form of computer communication in which individuals hold an online conversation via the [I]nternet. . . . [The] message is transmitted instantaneously . . . allow[ing] both parties . . . to respond immediately." *Commonwealth* v. *Disler*, 451 Mass. 216, 218 n.3 (2008), quoting *State* v. *Lott*, 152 N.H. 436, 437 (2005).

Marino responded, "[S]ure [why] not," the defendant explained that he might want things that Marino could not give him due to her age, such as "sex for one." Marino stated that she had had sex previously. The defendant described the size of his penis and said, "[I] know how to work it." He asked Marino, "[You] suck cock?" He also asked if Marino had any more photographs of herself, and Marino provided a second photograph of herself at age thirteen. Later in the conversation, the defendant asked Marino, "[W]ould you give me a [blow job] while I was driving? Marino said that she would, and the defendant responded, "[N]ice. I haven't been laid in months. I could use some sex."

During the conversation, the defendant also expressed doubt about whether he should date Marino, stating that it would be "illegal" because of her age. After discussing the possibility of talking via the telephone, the defendant suggested that they hold off, stating, "[I]'m not a trusting person" and "[I] take things slow." Marino responded that the defendant "sound[ed] like a girl."

On May 15, 2006, Marino sent the defendant an instant message, initiating a second online conversation. Marino told the defendant that she might have a party that summer because her mother was going away for a wedding and Marino would have the apartment to herself. The defendant asked if he could come to the party and sleep over.

The next day, Marino began a third online conversation with the defendant. The defendant confirmed that he could sleep at Marino's apartment when her mother was away during the summer. When Marino stated that she would be nervous upon first meeting him, the defendant asked, "[W]hat if I showed up naked, would you still be nervous?" The defendant also asked if Marino thought they would have sex and if she wanted to do so. Marino responded affirmatively and inquired whether the defendant would "re[a]lly do that." The defendant answered, "[I don't know. It is] tempt[ing]. [I] pro[bab]ly would."

Later in the conversation, the defendant asked, "[W]ould you have sex with me tonight?" Marino answered that she would if the defendant wanted to, and the defendant responded, "[I] think [I] would." However, he also expressed reservations, stat-

ing, "[I]f [I] have sex with you, [I] could go[] to jail." He added, "[I']d almost rather just hang out honestly. [M]aybe not sex tonight. [S]o [I] can trust you . . . . [T]he whole legal thing is killing my consci[ence]." Marino promised that she would not tell anyone. She explained that her mother was working late and would not arrive home until midnight.

When the defendant asked if he could telephone Marino, she gave him an undercover police telephone number. The defendant was hesitant about placing a call, expressing concern that Marino might be "a cop." The defendant requested Marino's address, and she told the defendant that she lived in an apartment complex on Franks Lane in Hanover. Marino emphasized a number of times that it was "up to" the defendant whether they had sex that night. The defendant looked up the directions to the apartment complex, determined that it would take him forty-four minutes to drive there, and told Marino that he would call her shortly. The conversation ended at 6:38 P.M.

Sometime after the conversation ended, the defendant "jumped in [his] truck and took off." At approximately 7:55 P.M., Marino received a telephone call from the defendant. He stated that he still felt very nervous about coming to her apartment. He also told Marino that he had a condom. At approximately 8:32 P.M., Marino received a second telephone call from the defendant. Marino requested that they change the meeting location from the apartment complex to a nearby video game store, and the defendant agreed.[3] Shortly after the second telephone call, the defendant drove into the store's parking lot, where he was arrested. Police recovered handwritten directions to Franks Lane and a package of condoms containing one unopened condom from the defendant's truck.

*Discussion.* In reviewing a claim of insufficient evidence, we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

---

[3]An audio recording of the defendant's postarrest statement to police was introduced at trial. In that statement, the defendant said that Marino "[a]sked me to meet her at the [video game store] to make her feel more comfortable, and I showed up [there]."

1. *Attempted rape and attempted indecent assault and battery.*
The defendant argues that the Commonwealth failed to introduce
sufficient evidence of an overt act to support the convictions of
attempted rape and attempted indecent assault and battery. To
establish an attempt under G. L. c. 274, § 6, the Commonwealth
must prove "an intention to commit the underlying offense,
[and] also an overt act toward its commission." *Commonwealth
v. Marzilli*, 457 Mass. 64, 66 (2010), quoting *Commonwealth v.
Ortiz*, 408 Mass. 463, 470 (1990).

We have interpreted the attempt statute consistently for more
than one hundred years, dating back to the opinions authored by
Chief Justice Holmes in *Commonwealth v. Kennedy*, 170 Mass.
18 (1897), and *Commonwealth v. Peaslee*, 177 Mass. 267 (1901)
(*Peaslee*). See *Commonwealth v. Bell*, 455 Mass. 408, 412
(2009) (*Bell*). As Chief Justice Holmes observed at that time,
"the aim of the law is not to punish sins, but is to prevent certain
external results." *Commonwealth v. Kennedy, supra* at 20. When
an individual prepares to commit a crime but has not undertaken
the last act necessary to accomplish it, the preparation will qualify
as an attempt only if it "comes very near to the accomplishment
of the [crime such that] the intent to complete it renders the
crime [sufficiently] probable." *Bell, supra* at 413, quoting *Peas-
lee, supra* at 272. Because "a defendant must have the present
opportunity to commit the substantive crime . . . , we look to the
actions left to be taken, or the 'distance or gap between the
defendant's actions and the (unachieved) goal of the consum-
mated crime — the distance must be relatively short, the gap
narrow.' " *Bell, supra* at 415, quoting *Commonwealth v. Hamel*,
52 Mass. App. Ct. 250, 258 (2001). The necessary proximity
between a defendant's actions and the completed offense varies
with the circumstances; in determining whether a defendant's
conduct came sufficiently close to accomplishing a crime so as to
warrant punishment as an attempt, we weigh "the gravity of the
crime, the uncertainty of the result, and the seriousness of any
threatened danger" to the victim. *Bell, supra* at 414, citing *Com-
monwealth v. Kennedy, supra* at 22.

Where police officers have orchestrated the scene and no
actual victim faces an immediate threat, the degree of danger is
lower and the permissible gap between a defendant's conduct

and the unfinished crime narrows; under such circumstances, the defendant must come "very close" to committing the crime before he can be found guilty of an attempt. See *Bell, supra* at 414 n.9. Thus, while the gravity of the crimes of rape of a child and indecent assault and battery on a child weighs in favor of punishing conduct occurring some physical or temporal distance from the ultimate accomplishment, a defendant may intend and take steps towards perpetrating such crimes without such conduct rising to the level of an attempt. See *id.* at 416-417.

In *Bell,* an undercover officer posed as a prostitute and offered to provide her fictitious four year old foster child to the defendant for sexual services in exchange for a fee. *Id.* at 410, 415. The defendant and the undercover officer planned to meet outside a convenience store, where the defendant expected the officer to bring the child. *Id.* at 410. Although the officer did not bring a child to the meeting location, she told the defendant when she met him there that the child was located on "Elm Street by Elm Park" and that he could follow her there. *Id.* at 410-411. The defendant informed the undercover officer that he wanted "intercourse" with the child and said that he had engaged in similar conduct with a child on a prior occasion. *Id.* at 411. He asked detailed questions about the officer's purported child, and the two negotiated a price that was consistent with the amount of money police later recovered from him. *Id.* at 410-411. The defendant was arrested as he drove his vehicle out of its parking space and turned in the direction of Elm Park. *Id.* at 411.

We concluded in that case that the evidence was insufficient to prove attempted rape of a child because the defendant did not have "a present intent to accomplish the crime without much delay . . . at a time and place where he was able to carry it out." *Id.* at 416, quoting *Peaslee, supra* at 273-274. The commission of the crime "was still far from certain" given that the defendant had not yet met the child, had not yet followed the officer to the child's precise location, and had not yet paid the agreed-upon fee. See *Bell, supra* at 415-417.

Here, although the evidence sufficed to show that the defendant intended to have sex with Marino in her apartment that night, it was "still far from certain" that he would go through

with the act. The defendant had not yet traveled to the intended scene, see *id.* at 416-417; *Peaslee, supra* at 271, 273-274, and his intent was to engage in voluntary (albeit legally nonconsensual) sex. See *Smith* v. *Jones,* 67 Mass. App. Ct. 129, 136 (2006) (distinguishing between involuntary and nonconsensual sex). Therefore, just as the defendant in *Bell* would have had to pay a fee before the undercover officer would make a child available to him for sex, the defendant here would have had to engage in additional efforts to persuade Marino to have sex with him.[4] Cf. *Commonwealth* v. *Fortier,* 56 Mass. App. Ct. 116, 122 (2002) (no overt act underlying attempt to cause physical harm where individual refused defendant's solicitation to cause such harm).

Additionally, and in contrast to the circumstances in *Bell,* the record does not reflect that the defendant previously had engaged in intercourse with a child under sixteen; upon meeting an actual thirteen year old, he might have decided not to act on his earlier intentions. See *Bell, supra* at 417 (while following undercover officer, defendant "could have decided to return to work and not commit the crime"). Cf. *Peaslee, supra* at 271, 273-274 (no overt act constituting attempted arson where defendant arranged combustibles within building and later drove to building with intent to light them, but stopped within one-quarter mile of building and drove away). Indeed, the defendant repeatedly expressed qualms about having sex with Marino, including during the telephone call he made while driving to meet her.

As did the Appeals Court, the Commonwealth seeks to distinguish the circumstances in *Bell* from the facts of the present case by noting that the defendant planned a specific time and location where he would commit the crime; that the plan "became solidified" over the course of several conversations with the undercover officer; that the defendant conversed directly with the purported underage victim, rather than through an intermediary; and that the defendant was not faced with a fee that he would be required to pay before proceeding. See *Commonwealth* v. *Buswell,* 83 Mass. App. Ct. 1, 7-8 (2012).

---

[4]The defendant inferred from the fact that Marino changed the location of their meeting to a public place that she did not yet feel comfortable being alone with him.

These factual differences, however, do not alter our analysis. First, the defendant's intent to have sex in a particular apartment complex sometime that night provides little more precision as to where and when the crime would occur than was involved in *Bell, supra* at 417, where that defendant planned to follow an undercover officer to the "vague location — 'Elm Street, by Elm Park,' " presumably to commit sexual acts with a child soon thereafter. Second, the defendant's repeated statements reflecting hesitation, made throughout the third Internet conversation and the subsequent telephone conversations, suggest a less "solid" plan than was involved in *Bell, supra* at 411, 419, where that defendant admitted that he previously had engaged in sexual intercourse with a child, negotiated a price for sexual acts with the child, and brought the required sum of money with him. Moreover, whatever "solidity" the defendant's plan had reflects more on his intent than on whether he committed an overt act in furtherance of that intent. "The law must be careful not to overplay the role of intention in such an inchoate crime as attempt, lest the result be precisely to punish the mere possession of a sinful mind." *Commonwealth* v. *Hamel*, 52 Mass. App. Ct. 250, 257 (2001). That the defendant engaged in multiple conversations about the intended crime provides no more evidence that he actually would have gone through with it than if there had been only a single conversation. See *id.* at 251-255, 260 (no overt act where defendant engaged in multiple conversations about intended murders with purported "hitmen" over period of six weeks).

Third, although the defendant's direct contact with the purported underage victim is relevant for purposes of the offense of child enticement, it did not make it more likely that he, as compared to the defendant in *Bell*, would have gone through with the intended rape or indecent assault and battery. Just as the defendant in that case still would have had to pay a fee before the undercover officer would have acquiesced to providing the child, the defendant here still would have had to build Marino's trust before she would have acquiesced, taken him back to her apartment, and engaged in sexual intercourse with him. We therefore agree with the dissenting view in *Commonwealth* v. *Buswell*, 83 Mass. App. Ct. at 18 (Cohen, J., dis-

senting in part), that "despite the details identified by the [Appeals Court] majority in an effort to distinguish *Bell*, the fact remains that the defendant was intercepted at a point in time and place where the commission of the crimes of rape and indecent assault and battery remained too uncertain and remote to support convictions [of] attempt."

The Commonwealth argues that the defendant and Marino could have engaged in sexual acts in his truck, so that his arrival at the video game store to meet Marino placed him "at a time and place where he was able to carry . . . out" the intended crimes. *Bell, supra* at 416, quoting *Peaslee, supra* at 273-274. In support of this position, the Commonwealth points to the first instant message conversation, in which the defendant asked Marino, "[W]ould you give me a [blow job] while I was driving?" However, the third instant message conversation and the subsequent telephone calls directly preceding the planned meeting focused solely on having sex in Marino's apartment. Thus, the Commonwealth did not provide sufficient evidence to show that the defendant possessed the "present intent" to engage in sexual acts in his truck that must have accompanied his presence "at a time and place where he was able to carry . . . out" such crimes. See *Peaslee, supra* (no overt act constituting attempted arson if defendant collected and prepared materials in room for purpose of setting fire to them but lacked present intent to set fire).

The Commonwealth suggests also that we overrule *Bell* because it renders proof of attempted rape of a child too difficult. We do not agree that our holding in that case impedes the Commonwealth from proving attempt in appropriate cases, where there is evidence of an act that is less remote from the intended crime. See *Bell, supra* at 414 n.9 (necessary proximity to particular offense "is determined on a case-by-case basis"). Furthermore, soliciting an individual believed to be under the age of sixteen to engage in a sexual act constitutes the offense of enticement of a child, G. L. c. 265, § 26C. See *Commonwealth* v. *Disler*, 451 Mass. 216, 218 n.3, 230-231 (2008) (affirming conviction of enticement of child where defendant used instant messages to solicit sexual acts from someone he

believed to be under sixteen). The defendant properly was convicted of this offense.[5] See part 3, *infra*.

2. *Attempted dissemination of matter harmful to a minor.* The defendant contends that the instant messages he sent to Marino do not constitute "matter" as that term is used in G. L. c. 272, § 28, and thus that his convictions for attempted dissemination of matter harmful to a minor must be vacated.[6] In *Commonwealth* v. *Zubiel*, 456 Mass. 27, 28 (2010) (*Zubiel*), we held that the term "matter," as defined in G. L. c. 272, § 31, "does not encompass electronically transmitted text, or 'online conversations,' for the purposes of a prosecution for attempted dissemination of matter harmful to a minor under G. L. c. 272, § 28." Subsequent to our decision in *Zubiel*, the Legislature amended the definition of "matter" so as to encompass "any electronic communication including . . . instant messages." St. 2010, c. 74, § 2. This amendment, however, "cannot apply retroactively to the defendant's 2006 conduct." *Commonwealth* v. *Dodgson*, 80 Mass. App. Ct. 307, 311 (2011). See art. I, § 10, cl. 1, of the United States Constitution; art. 24 of the Massachusetts Declaration of Rights.

The Commonwealth argues that *Zubiel* should be overruled and that we should hold that online conversations constituted "matter" for purposes of G. L. c. 272, § 28, even prior to the statutory amendment. The Commonwealth's argument concerning the meaning of the term "matter" is unpersuasive. Nothing in the argument alters the conclusion that, prior to the 2010 amendment, the language of the statute was at best ambiguous concerning whether "matter" encompassed electronically transmitted text; thus, the statute must be strictly construed

---

[5]Contrast the Model Penal Code's less stringent approach to establishing attempt. See Model Penal Code § 5.01(2) (1985) ("enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission" "shall not be held insufficient as a matter of law" to constitute attempt "if strongly corroborative of the actor's criminal purpose").

[6]General Laws c. 272, § 28, provides in part:

"Whoever purposefully disseminates to a person he knows or believes to be a minor any matter harmful to minors, as defined in [G. L. c. 272, §] 31, knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to a person he knows or believes to be a minor, shall be punished . . . ."

against the Commonwealth. See *Zubiel, supra* at 33, citing *Commonwealth* v. *Richards*, 426 Mass. 689, 690 (1998).

3. *Enticement of a child.* "[T]he crime of child enticement is complete when an individual, possessing the requisite criminal intent [to commit certain sexual or violent crimes], employs words, gestures, or other means to entice (or lure, induce, persuade) someone who is under the age of sixteen, or whom the actor believes is under the age of sixteen, to enter or remain in a vehicle, dwelling, building, or outdoor space." *Commonwealth* v. *Disler*, 451 Mass. at 222. See G. L. c. 265, § 26C.

Following his arrest, the defendant consented to the seizure and forensic examination of his computer.[7] Police officers seized the computer and made a copy of its hard drive, which they used to conduct the forensic examination. The forensic examiner found fragments of the three instant message conversations between redline_5k and melissaqt1995, as well as the two photographs of Marino at age thirteen that she had sent to the defendant. The examiner also found nude photographs of the defendant.[8]

The defendant moved to suppress the evidence obtained from the forensic examination. At the suppression hearing, the Commonwealth stipulated that it would not seek to introduce the nude photographs because it was of the view that these photographs would constitute inadmissible propensity evidence. The judge denied the motion to suppress on the ground that the defendant gave "voluntary and unconstrained consent" to the forensic examination of his computer, without addressing the validity and scope of the search warrant.

Subsequent to the suppression hearing, the defendant notified the Commonwealth that he intended to present a defense of entrapment. As a result, police conducted a supplemental forensic examination of the copy of the defendant's hard drive in their possession, searching for evidence of sexual conversations with underage individuals that took place prior to the defendant's conversations with Marino. The examiner found one con-

---

[7]As a precaution, police also obtained a search warrant in the event that the defendant revoked his consent.

[8]The defendant testified that these photographs depicted him while masturbating.

versation in which the defendant told a fifteen year old named "Sammything052" that he could use "a good [blow job]." In a second conversation, the defendant told a sixteen year old named "Jennacheer2005" that he was sexually aroused by the fact that she was "under age" and "not legal." He stated that he would show up at her doorstep naked and that he wanted to engage in intercourse and oral sex with her. He also asked if she wanted to watch him masturbate on camera. During the conversation, the defendant and Jennacheer2005 role-played, pretending that she was eight years old and he was her "horny father." In a third conversation, the defendant told a seventeen year old named "Diamondgirl613" that he found her age sexually arousing because "[i]t's illegal for you to have sex." Later in the conversation, the defendant used a "Webcam" to make a video recording of himself masturbating, which he electronically transmitted to her.

Before trial, the prosecutor informed the defendant that if he presented a defense of entrapment, the Commonwealth would seek to rebut that defense by introducing the nude photographs and copies of the Internet conversations with other young women. The defendant decided to proceed with the entrapment defense, but sought to suppress the photographs based on the Commonwealth's prior stipulation not to introduce them. The judge denied the defendant's motion, and the Commonwealth presented the photographs and online conversations in rebuttal. The defendant objected to the introduction of portions of the online conversations and to the prosecutor's use of the term "under age" in reference to Jennacheer2005 and Diamondgirl613, who were sixteen and seventeen years old, respectively.

a. *Stipulation.* The defendant contends that the Commonwealth should have been bound by its stipulation not to introduce the nude photographs. A court may vacate a stipulation if it is deemed "improvident or not conducive to justice." *Loring* v. *Mercier*, 318 Mass. 599, 601 (1945). See, e.g., *Commonwealth* v. *Henry's Drywall Co.*, 362 Mass. 552, 557 (1972); *Commonwealth* v. *Clarke*, 350 Mass. 721, 722 (1966). The decision to vacate a stipulation falls within the trial judge's discretion. See *Swift* v. *Hiscock*, 344 Mass. 691, 693 (1962); *New England Trust Co.* v. *Triggs*, 334 Mass. 324, 342 (1956).

The Commonwealth's stated reason for stipulating not to introduce the photographs was that they constituted inadmissible propensity evidence. This rationale ceased to exist once the defendant notified the Commonwealth that he intended to argue entrapment. See *Commonwealth* v. *Vargas*, 417 Mass. 792, 795 (1994); Mass. G. Evid. § 404(b) (2014). "[I]n situations where the defendant employs entrapment as a defense to criminal liability, prior bad acts relevant to a defendant's predisposition to commit a crime are highly probative and can overcome the Rule 404(b) bar [on propensity evidence]." *United States* v. *Van Horn*, 277 F.3d 48, 57 (1st Cir. 2002). Furthermore, the defendant did not prejudicially rely on the stipulation because the prosecutor notified him prior to trial that the Commonwealth planned to introduce the nude photographs in order to rebut his entrapment defense. See *Leatherbee Mtge. Co.* v. *Cohen*, 37 Mass. App. Ct. 913, 916 (1994). Thus, the judge did not abuse his discretion in allowing the introduction of the photographs notwithstanding the prior stipulation.

b. *Suppression.* The defendant maintains that police lacked a valid warrant to search his computer for evidence other than the instant message conversations with melissaqt1995. Although police did obtain a warrant to search the computer, the defendant contends that they did not have probable cause for the search that produced the nude photographs and that they were required to obtain a second warrant before conducting the supplemental examination of his computer for instant message conversations with other "underage" individuals.

Police may conduct a search without a warrant where the suspect freely and voluntarily has consented to the search. See *Commonwealth* v. *Tyree*, 455 Mass. 676, 695 (2010); *Commonwealth* v. *Sanna*, 424 Mass. 92, 96-97 (1997). As the motion judge determined, here the defendant gave "voluntary and unconstrained consent" to the forensic examination of his computer by police for potential use against him in court. The defendant placed no limitation on the scope of this consent. See *Commonwealth* v. *Tyree*, *supra* at 696; *Commonwealth* v. *Gaynor*, 443 Mass. 245, 254 (2005). See also *Commonwealth* v. *Hinds*, 437 Mass. 54, 59 (2002), cert. denied, 537 U.S. 1205 (2003) (content-based limitation on consent to computer search permit-

ted examination of all locations in computer that might contain such content). That police took the additional precautionary step of obtaining a search warrant did not narrow the scope of the search permitted by the defendant's consent. Cf. *id.* at 58 (where police received consent to search computer, Commonwealth did not need to prove that search fell within scope of warrant otherwise obtained). Nor were police required to obtain a second warrant before conducting the supplemental examination of the defendant's computer. See *Commonwealth* v. *Gaynor, supra* at 256. See also *Commonwealth* v. *Kaupp*, 453 Mass. 102, 115 (2009) (where "a written return listing the devices to be examined was filed seven days after the search warrant issued," "police [did] not need to complete forensic analysis of a seized computer and other electronic data storage devices within the prescribed period for executing a search warrant").

c. *Entrapment defense — evidence of predisposition.* Once a defendant who is attempting to establish an entrapment defense produces "some evidence" of government inducement, "[t]he burden . . . shifts to the Commonwealth 'to prove beyond a reasonable doubt that (1) there was no government inducement or (2) the defendant was predisposed to commit the crime.' " *Commonwealth* v. *Madigan*, 449 Mass. 702, 707 (2007), quoting *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 47 (1992), *S.C.*, 423 Mass. 546 (1996). "[N]o entrapment exists 'if the accused is ready and willing to commit the crime whenever the opportunity might be afforded.' " *Commonwealth* v. *Miller*, 361 Mass. 644, 651 (1972), quoting *United States* v. *Groessel*, 440 F.2d 602, 605 (5th Cir.), cert. denied, 403 U.S. 933 (1971).

The defendant argues that the Commonwealth produced insufficient evidence of predisposition. To show such predisposition, the Commonwealth may introduce evidence of a defendant's prior bad acts, provided that those acts are sufficiently similar to the crime charged to ensure that their probative value outweighs the strong likelihood of prejudice. See *Commonwealth* v. *Vargas*, 417 Mass. at 795.

Contrary to the defendant's assertion, his online conversations with other young women reflect conduct sufficiently similar to the crime charged to have warranted consideration by the jury. The conversations involved the defendant luring, tempting,

or inviting sexual interaction with individuals who were or whom he believed to be "under age," conduct that could constitute enticement of a child were an interlocutor under the age of sixteen. See G. L. c. 265, § 26C. The defendant points out that Jennacheer2005 and Diamondgirl613 were sixteen and seventeen years old, respectively, and therefore above the age of consent. It is the defendant's belief, however, that is relevant in determining his willingness to solicit sex from a child. In his conversations with these individuals, the defendant expressed his belief that they were "under age" or legally incapable of consenting to sex, and stated that he found this characteristic to be sexually arousing.[9]

Moreover, the judge did not abuse his discretion in allowing the introduction of the nude photographs of the defendant masturbating, which he electronically transmitted to Diamondgirl613 as part of a Webcam recording. See *Commonwealth* v. *Cruz*, 445 Mass. 589, 592 (2005), quoting *Commonwealth* v. *Waters*, 399 Mass. 708, 715 (1987) ("Decisions about the admissibility of photographic evidence are 'left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion' "). The jury could have found that, by sending such images to a seventeen year old, the defendant intended to disseminate matter harmful to a minor, see G. L. c. 272, § 28, one of the offenses set forth in the definition of the crime of enticement of a child. See G. L. c. 265, § 26C.

Accordingly, the Commonwealth presented sufficient evidence of the defendant's predisposition to commit enticement of a child. Cf. *Commonwealth* v. *Disler*, 451 Mass. at 233 (Commonwealth "easily" met its burden of proving defendant's predisposition to commit child enticement based on Internet exchanges in which defendant admitted to molesting children and invited informant to share in his sexual exploits).

---

[9]For the same reason, the judge did not abuse his discretion in permitting the prosecutor to refer to "Jennacheer2005" and "Diamondgirl613" as "under age." The prosecutor used the same term as the defendant in order to verify both the defendant's belief that they were underage and his sexual attraction to such individuals. The prosecutor's questions clearly focused on the defendant's belief, and the jury received other evidence concerning the actual age at which an individual is legally able to give consent.

*Conclusion.* The judgments of conviction of attempted rape of a child, attempted indecent assault and battery on a child, and attempted dissemination of matter harmful to a minor are reversed and set aside, and judgments shall enter for the defendant on those charges. The judgment of conviction of enticement of a child is affirmed.

*So ordered.*