NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12272

COMMONWEALTH  vs.  SCYPIO DENTON.

Essex.     March 9, 2017. - June 1, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.

Controlled Substances.  Entrapment.  Evidence, Prior conviction.

Indictment found and returned in the Superior Court Department on February 6, 2014.

The case was tried before James F. Lang, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

James E. Methe for the defendant.
Quentin R. Weld, Assistant District Attorney (Elin H. Graydon, Assistant District Attorney, also present) for the Commonwealth.

BUDD, J.  Following a jury trial, the defendant, Scypio

Denton, was convicted of distribution of heroin, in violation of

G. L. c. 94C, § 32 (b).[1]  At trial, the defendant raised the

_____

[1] Following his conviction on the substantive crime, the

affirmative defense of entrapment. The judge permitted the Commonwealth to respond by introducing evidence of three prior convictions, despite the defendant's objection that they were too stale to be probative of his predisposition to commit the crime. The defendant's principal argument on appeal concerns the decision to admit this evidence.[2] We reverse on that ground.

Background. We recite the facts the jury could have found.

1. 2013 distribution. On December 17, 2013, the defendant was approached by an undercover police officer posing as a drug addict.[3] The officer told the defendant he "was dope sick and . . . looking to get hooked up . . . because [he] wasn't feeling well." He asked the defendant for "a forty" of "brown"[4] and explained that his dealer was not answering his telephone calls because he owed the dealer money. At the time of the undercover operation, there was an unwritten rule among drug users that if

_____

defendant pleaded guilty to being a subsequent offender. The judge sentenced the defendant to from three and one-half years to three and one-half years and one day in State prison, the mandatory minimum sentence for subsequent drug offenders.

[2] We transferred the case from the Appeals Court to this court on our own motion.

[3] During his sixteen years working undercover, the police officer had made approximately 850 undercover purchases. On the day that the officer approached the defendant, the officer and his colleagues were not focused on any one individual, but rather on reducing open-air drug sales in the area.

[4] The officer explained that this was a reference to an amount of heroin worth forty dollars.

somebody was "dope sick" from heroin withdrawal, another user would help them to find more heroin, as he or she could sympathize with the feeling.[5]  The officer believed that this approach for targeting heroin distribution was successful approximately twenty to thirty per cent of the time.

The defendant agreed to help, and they got into an unmarked motor vehicle driven by another undercover officer.  While they were in the vehicle, the defendant used an officer's cellular telephone to tell someone that "he wanted to come by and grab a bag."  They then proceeded to a destination the defendant gave them.  When they arrived, an officer gave the defendant forty dollars and took the defendant's cellular telephone as collateral.  The defendant entered a building and returned with a bag of a tan powdered substance, which he gave to the officer who claimed to be "dope sick."  One of the officers gave the defendant five dollars in exchange for obtaining the drugs.

---

[5] At trial, the officer explained why other users would help when someone claimed to be "dope sick":

> "[W]hen a user cannot obtain heroin to use, they face . . . withdrawals, ranging from sweats, to the chills, severe aching in the muscles and joints, nausea. . . .  [I]t's . . . quite a bad scene . . . .  [Drug users] understand . . . the pain and what they're suffering through.  And they are going to do pretty much anything they can to help you, because at some point they may be in that position themselves, and they're going to want someone to help them out."

The tan powdered substance was later tested and found to be a mixture of heroin and caffeine.  A warrant issued for the defendant's arrest, which was carried out at a later date to protect the identity of the undercover officers.

2.  <u>Prior convictions introduced at trial</u>.  After the judge determined that the defendant had raised the issue of entrapment, the prosecutor was allowed to present the following evidence of three former convictions to show the defendant's predisposition to commit the crime.

In 1993, a police officer saw the defendant place a pipe on the floor and a bag of marijuana under a door.  The defendant stated that he was buying drugs for two other men.  Based on the substance found in two other bags that were found on or near the defendant, he was ultimately convicted of possession with intent to distribute cocaine.

In 1994, an undercover police officer asked the defendant to get him twenty dollars' worth of "crack" cocaine.  The defendant agreed to help him.  The defendant went to a nearby apartment on the officer's behalf to obtain the cocaine.  When the defendant returned with a bag containing a substance that looked like crack cocaine, he asked for some money for his role in the deal.  He was again convicted of possession with intent to distribute cocaine.

In 1991, the defendant was convicted of possession of a class A substance with intent to distribute.[6]

Discussion. We review evidentiary rulings for abuse of discretion. Commonwealth v. Dargon, 457 Mass. 387, 400 (2010). Although admissible to show motive and modus operandi, and for other purposes, evidence of a defendant's prior bad acts, including evidence of past crimes, is generally inadmissible to show a defendant's propensity to commit the crime with which he or she is charged. See Mass. G. Evid. § 404(b) (2017). Cf. Alegata v. Commonwealth, 353 Mass. 287, 300 (1967) ("The concept of 'once a criminal always a criminal' is abhorrent to our law"). However, when a defendant raises the defense of entrapment, the Commonwealth may respond with propensity evidence. See Commonwealth v. Buswell, 468 Mass. 92, 106 (2014); Mass. G. Evid. § 405(b).

An entrapment defense is, at bottom, a claim by the defendant that he or she ordinarily would not have committed the charged crime had officers not enticed him or her to do so. In response, the Commonwealth is entitled to refute that claim by introducing evidence to show that the defendant was predisposed to commit the charged crime because he or she had committed similar bad acts in the past; i.e., that police officers did not

---

[6] For this crime, the prosecutor did not present the underlying facts.

entice an otherwise innocent person to commit a criminal act. See Buswell, supra; Mass. G. Evid. § 405(b). The bad acts must be "sufficiently similar to the crime charged to ensure that their probative value outweighs the strong likelihood of prejudice."[7] Buswell, supra, citing Commonwealth v. Vargas, 417 Mass. 792, 795 (1994).

In evaluating the admissibility of prior bad act evidence in an entrapment case, a judge must also consider whether sufficiently similar prior bad acts are recent enough that they remain probative of the defendant's predisposition to commit the charged crime. Recent bad acts tend to show that a defendant was predisposed to commit a similar crime, so they have strong probative value that will likely outweigh the prejudice to the defendant. See Buswell, 468 Mass. at 106-107, citing Vargas, 417 Mass. at 795. However, over time, as the defendant has had the opportunity to reform himself or herself, the balance between probative value and unfair prejudice shifts incrementally toward the latter. See Commonwealth v. Dingle, 73

---

[7] This is similar to the exacting standard we employ for the admission of prior bad act evidence by the prosecution where there is no defense of entrapment. See Commonwealth v. Crayton, 470 Mass. 228, 249 & n.27 (2014) (prior bad act evidence is inadmissible "if its probative value is outweighed by the risk of unfair prejudice to the defendant"); Mass. G. Evid. § 404(b)(2). Contrast Mass. G. Evid. § 403 (relevant evidence that does not concern prior bad acts is admissible unless "its probative value is substantially outweighed by a danger of . . . unfair prejudice" [emphasis added]).

Mass. App. Ct. 274, 284 (2008) (probative value of predisposition evidence was outweighed by its prejudice where prior bad acts were "old, the most recent dating back more than thirteen years"); Commonwealth v. Childs, 23 Mass. App. Ct. 33, 37-38 (1986), S.C., 400 Mass. 1006 (1987) (when introduced at trial in 1984, prejudicial effect of prior convictions from 1950s and 1960s was more pronounced). Thus, prior convictions must "not be too remote in time" or they lose their probative value as to whether the defendant was predisposed to commit this most recent crime. Cf. Commonwealth v. Butler, 445 Mass. 568, 574 (2005), quoting Commonwealth v. Barrett, 418 Mass. 788, 794 (1994) (probative value of prior bad acts decreases over time); G. L. c. 233, § 21 (imposing time limits on admission of prior convictions to impeach witness credibility).

Here, the parties and the judge discussed at length what evidence the prosecutor could introduce to rebut the defendant's entrapment defense by showing that he was predisposed to commit the crime. The prosecutor stated her intention to elicit testimony that would show the facts and certified convictions of two prior cases, as well as a certified conviction from a third case, all of which ultimately were introduced at trial. The defendant moved to exclude the proffered evidence of these convictions, arguing that their age made them more prejudicial than probative. The judge denied the motion to exclude,

concluding that the possible prejudicial impact of the evidence did not outweigh their probative value.

The judge appeared to have given the age of the convictions careful consideration. However, in the circumstances of this case it was error to admit the prior bad acts. Although the facts in at least two of the defendant's prior cases bore a remarkable similarity to those in this case (i.e., acting as a "middleman" in a drug transaction), the initially high probative value of the convictions dropped sharply over time. The acts underlying the convictions all took place in or before 1994, nineteen years before the crime charged in this case. The Commonwealth was unable to identify any case where past crimes this old were used as propensity evidence to rebut an entrapment defense; nor have we found any. See Dingle, 73 Mass. App. Ct. at 284 (evidence of bad acts from thirteen or more years earlier was erroneously admitted). Here, where the most recent act was at least nineteen years old, the probative value regarding predisposition no longer outweighed the potential prejudice to the defendant. In addition, the limiting instruction[8] to the jury was insufficient to mitigate the error given the inherent

---

[8] The judge instructed: "You may consider this evidence solely for whatever light it sheds on the issue of whether the [d]efendant was predisposed and ready to commit the offense with which he is charged. You are not to consider it for any other purpose."

dangers in admitting evidence of predisposition.  See,
e.g., <u>Whiting</u> v. <u>United States</u>, 296 F.2d 512, 516 (1st Cir.
1961) (cautioning that admission of prior convictions "is
subject to the defects inherent in any retrospective appraisal
of past conduct").

    <u>Conclusion</u>.  Because the introduction of the prior
convictions was not harmless error, a new trial is required.[9]

<u>Judgment reversed</u>.

<u>Verdict set aside</u>.

---

[9] The defendant further attributes error to the introduction
of a statement by a retired police officer who testified
regarding a prior conviction and to the imposition of a
mandatory minimum sentence.  He also argues that the prosecutor
erred in remarking that jurors are average people who would not
know vernacular drug terms, referring to undercover police
operations in other types of criminal cases, and stating that
the Commonwealth did not have sufficient evidence to charge the
dealer.  Because we conclude that evidence of the defendant's
prior convictions warrants a new trial, we need not address
these arguments.